# EXHIBIT A

# EXHIBIT A

State Court Complaint

Electronically Filed
12/16/2022 3:46 PM
Steven D. Grierson
CLERK OF THE COURT

**LEX TECNICA LTD**
VINCENT J. GARRIDO, ESQ.
Nevada Bar No. 15918
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145
vince@lextecnica.com
*Attorneys for Plaintiffs*

CASE NO: A-22-862740-C
Department 13

## EIGHTH JUDICIAL DISTRICT COURT

## CLARK COUNTY, NEVADA

\* \* \*

| | |
|---|---|
| CANDRA EVANS, individually and as parent to R.E., TERRELL EVANS, individually and as parent to R.E.,<br><br>            Plaintiffs,<br>vs.<br><br>KELLY HAWES, JOSHUA HAGER, SCOTT WALKER, JESUS JARA CLARK COUNTY SCHOOL DISTRICT; and DOES 1 through 100; ROE ENTITIES 11 through 200, inclusive,<br><br>            Defendants. | CASE NO.:<br><br>DEPT. NO:<br><br><br>**VERIFIED COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs, Candra Evans, Terrell Evans, individually and as parents to R.E., hereby complain against Defendant(s), KELLY HAWES, JOSHUA HAGER, SCOTT WALKER, and CLARK COUNTY SCHOOL DISTRICT (CCSD); as well as DOES 1 through 100 including board members of the CCSD School Board; ROE Business Entities 1 through 100, inclusive, for conducting and supporting  CCSD teacher Kelly Hawes' unlawful grooming and abuse of a minor student, compelling the minor student (and other students) to perform obscene, sexual activity as a class assignment. When Plaintiffs attempted to complain and seek relief, CCSD's Board prevented Plaintiff's from reading the assignment at a School Board meeting because the content was obscene. After CCSD staff expressly agreed Kelly Hawes activity was unlawful and

1

inappropriate, and that Ms. Hawes would not interact further with the minor, Ms. Hawes conspired with leadership to again falsely imprison and abuse the minor and shamed the minor for reporting the misconduct. Moreover, CCSD staff conspired to defame the Plaintiffs, infringe their First Amendment rights, and prevent the parents from seeking relief.

Given the foregoing heinous injustices, Plaintiffs complain and seek relief as follows:

## I. PARTIES

1.      Plaintiffs, Candra Evans, Terrell Evans., R.E., are individuals who currently, and at all relevant times, are residents of Clark County, Nevada.

2.      Defendant, CLARK COUNTY SCHOOL DISTRICT ("CCSD"), is a political subdivision of the State of Nevada created by the Nevada Revised Statutes ("NRS") 386.010, that at all relevant times operated in Clark County, Nevada.

3.      Defendant, Jesus Jara, Superintendent of the Clark County School District, an individual who currently, and at all relevant times, is a resident of Clark County, Nevada.

4.      Defendant, Kelly Hawes, R.E.'s teacher, an individual who currently, and at all relevant times, is a resident of Clark County, Nevada.

5.      Defendant, Joshua Hager, assistant principal at Las Vegas Academy of the Arts ("LVA"), a CCSD school, an individual who currently, and at all relevant times, is a resident of Clark County, Nevada.

6.      Defendant, Scott Walker, principal at Las Vegas Academy of the Arts ("LVA"), a CCSD school, an individual who currently, and at all relevant times, is a resident of Clark County, Nevada.

///

///

7.      DOE 1, Twitter user @AnGeL_OF-cHaOs, upon information and belief, this user is a CCSD employee and an individual who currently, and at all relevant times, is a resident of Clark County, Nevada. Plaintiffs will amend this complaint to insert this user's name when ascertained.

8.      All of the acts and/or failures to act alleged herein were performed by and/or are attributable to defendants, individually or acting by and through their agents and employees. Said acts and/or failures to act were within the scope of any agency or employment, or were ratified by defendants.

9.      The names and capacities, whether individual, corporate, associate or otherwise, of defendants and/or their alter egos sued herein as DOES 1 through 100, and ROE Business Entities 1 through 100, inclusive, are presently unknown, and Plaintiffs will amend this complaint to insert the name(s) when ascertained.

## II.FACTUAL ALLEGATIONS[1]

### A. Ms. Hawes Assigns the Sexually Obscene Monologue and Requires R.E. to Read it for a Grade.

10.      Candra Evans and Terrell Evans are parents to R.E., a minor who attends the Clark County School District at the Las Vegas Academy of the Arts ("LVA").

11.      In March 2022, Kelly Hawes ("Hawes") required students in her class to begin working on drafts of their monologues. The students would then place all of their monologues in a pile and each student would randomly pick up another student's monologue. The student would then be required to memorize and perform the other student's monologue.

///

///

---

[1] *See* Exhibit A, Verification of Complaint.



12.     Upon information and belief, as the drama teacher, Ms. Hawes oversaw, directed, edited and approved the nature and content of the monologues.

13.     To wit, Hawes reviewed, edited and approved the first and then second drafts of each student's monologue.

14.     R.E.'s student-partners' monologue contained explicit, obscene and sexually violent material.

15.     Ms. Hawes reviewed the first draft, and edited it.

16.     Hawes helped the other student edit their obscenely violent pornographic monologue knowing that it would then be provided to another student to read, memorize and perform in front of the class.

17.     Under Hawes' direction, the final version to be memorized and performed by R.E. described a woman coming out as a lesbian to her ex-boyfriend as follows:

**"I don't love you. It's not you, it's just (looks down) your dick. I don't like your dick or any dick in that case. I cheated Joe. We were long distance and I'm in**

4

**college and me and this girl, my roommate, started having some drinks and you know, I thought it was a one time thing but then we started going out for coffee, and started sleeping in the same bed. I never thought it would get this far but God, it was like fireworks, and made me realize that with you it was always like a pencil sharpener that keeps getting jammed. I've tried to look at it from all different perspectives, but the truth is, I'm a fucking lesbian. I'll never love you or any man, or any fucking dick. I hope you find a nice straight girl because that's not me, and I'm tired of pretending that it is."**

18.     Ms. Hawes conditioned grades in the class on the performance of the monologue.

19.     Ms. Hawes directed R.E. to perform the monologue in class, for a grade, even though it constituted sexual education and sexually obscene material.

**B. Candra Evans Discovers the Sexually Obscene Monologue and Plaintiff's First Futile Meeting with CCSD.**

20.     On April 22, 2022, Candra Evans found the written version of the assignment.

21.     Candra Evans immediately spoke with R.E. to determine where this had come from and what it was.

22.     When she realized it was a school assignment, that R.E. had performed at the direction of Ms. Hawes, Candra Evans then drove down to LVA and eventually spoke with Joshua Hager ("Hager"), the assistant principal. She and her husband (who joined via video as he is deployed overseas with the U.S. Military) spoke with Hager. Hager he stated that he would contact Hawes. He agreed  the assignment was not appropriate for the classroom and he would address it with her.

23.     He empathized with them that he would be very upset if he found out that assignment had been given to his daughter. He told them that Plaintiffs were handling the issue better than he would and that it would not be swept under the rug. He promised he would make sure that it never happened again. Further, he agreed that Hawes should have stopped R.E. as soon as she heard the first line of the monologue.

///

24.     R.E.'s parents informed Hager that Hawes was one of R.E.'s favorite teachers and R.E. wanted her approval, and Hager wanted to try and resolve the issue without going to the school police.

25.     R.E.'s parents agreed that Hager could speak with R.E., but only with a female administrator present.

26.     Despite promising Plaintiffs' that he wouldn't, Hager met with R.E. alone; without a female administrator being present at the meeting.

27.     Hager said he would call R.E.'s parents about how the meeting went.

**28.     He did not.**

**C. Plaintiffs' Second Futile Meeting with CCSD regarding Hawe's Obscene Assignment**

29.     After a few days of not hearing from Hager and knowing that Hager met with R.E. alone, Candra Evans sent an email to Hager asking for a meeting with Hager, Salima Virani ("Virani") (a school counselor), and Scott Walker ("Walker"), the Principal of LVA. A meeting was set for April 29, 2022.

30.     At the meeting on April 29, 2022, Hawes defended the assignment and why she required the students to do it.

31.     Hawes confirmed that she knew and approved the content of the monologues and still required R.E. to read, memorize and perform the monologues as part of her class.

32.     Hawes admitted that she actually helped the writer of the monologue to re-write it from their first draft.

33.     Hawes sexual conduct and instruction was a gross violation of her professional responsibilities.

34.     Hawes' acts constituted sexual **grooming** of her students, particularly R.E.

///

35.     Walker, Hager and Hawes all defended the obscene monologue and then blamed R.E. for reading it, stating that she could have said "no", but she didn't.

36.     After R.E.'s parents pushed back on their comments, Hager and Virani backtracked and admitted that the assignment was not appropriate for the classroom.

37.     Hawes has never apologized for the assignment and continued to defend pushing that disgusting material in her classroom.

38.     Hawes even seemed proud of it, as if it was her right and duty to sexually indoctrinate the students in her class.

**D. Plaintiffs' Third Futile Meeting with CCSD Regarding Hawes' Grooming and Sexually Obscene Assignment**

39.     On May 1, 2022, while the administrators were sweeping this under the rug at LVA, Plaintiffs reached out to Melissa Gutierrez, the Region Superintendent for Region 2 (the superintendent over LVA) hoping for her to fix this gross violation of R.E.'s rights.

40.     On May 4, 2022, Plaintiffs also reached out to Joseph Petire ("Petrie"), a School Associate Superintendent in Region 2.

41.     On May 10, 2022, Candra Evans met with Petrie. He said that in all of his years of working at CCSD the monologue was the worst thing he has read. He then promised to investigate it.

42.     Candra Evans requested that no one at LVA speak with R.E. about the matter unless she was present and Petrie said he would honor the request.

**E. Plaintiffs' Efforts to File Police Report Blocked By CCSD and Office Robles**

43.     On May 9, 2022, Plaintiffs met with the Las Vegas Metropolitan Police Department ("LV Metro PD") and were told that they need to file a police report with the CCSD school police.

///

///

44.    That same day, Candra Evans met with Officer Robles at LVA, who was dismissive of her concerns. Officer Robles reluctantly took her statement, but did so *without* her body camera being on in violation of NRS 289.830(1)(a).

45.    It was later discovered that Officer Robles falsified the report in violation of NRS 197.130 and appears to have conspired with others to prevent the report from being filed accurately, or in any way that would have resulted in a proper or accurate investigation.

**F. Plaintiffs' Fourth Futile Meeting with CCSD Regarding Hawes' Grooming and Sexually Obscene Assignment**

46.    On May 11, 2022, Candra Evans spoke with Sargent Brooks (Officer Robles' supervisor) who cut her off almost every time she tried to speak.

47.    Sargent Brooks admitted that Officer Robles' failure to use the bodycam was a violation.

48.    Sargent Brooks also contributed to the falsified police report in violation of NRS 197.130 and appears to have conspired with Officer Robles' to prevent the report from being filed accurately.

**G. Plaintiffs' Fifth Futile Meeting with CCSD Regarding Hawes' Grooming and Sexually Obscene Assignment - Raised as a Complaint to the School Board - Goes Viral**

49.    On May 12, 2022, as Candra Evans wasn't getting anywhere with CCSD and decided that she would say something to the CCSD Board of Trustees.

50.    Candra Evans attempted to speak at the School Board Meeting.

51.    Candra Evans began to read the obscene material that Hawes' had assigned to R.E. to perform.

52.    Before Candra Evans could finish, she was interrupted and told that the statement was profane and improper for a public School Board Meeting.

///

53.     A discussion occurred, Candra Evans was told that she was not allowed to read the rest of the assignment, and she asked "If you don't want me to read it to you, what was it like for my 15-year-old daughter to have to memorize pornographic material…?"

54.     Before she could finish her comment, Defendant Dr. Jara cut Candra Evans' microphone and spoke over her and prevented her from speaking or using her allotted time to make a public comment - violating her First Amendment rights and procedural due process rights.

55.     Someone unknown to Candra Evans using the handle @LibsOfTikTock posted a video of Candra Evans' futile effort to obtain relief for her minor child.



56.     The video went viral, generating over 2.2 million views.

57.     On May 17, 2022, in reaction to Candra Evans' effort to make a public complaint, CCSD defamed Plaintiffs by stating that the monologue was a "student-generated writing exercise."

58.     CCSD's defamatory statement was purposely meant to lead many to believe that R.E. had written the monologue, instead of it being written by another student under Hawes' direction and control.

59.     Further, CCSD Trustee called Candra Evans' attempt to get help from the CCSD Board of Trustee, after being lied to by LVA staff, a "publicity stunt" reinforcing how futile it is to bring anything of concern to the school board. That same CCSD Trustee further claimed that Power2Parent "coached [Candra Evans] through" her public comment, doubling down on her previous statement that Candra Evans' public comment was a "publicity stunt." This is false as Candra Evans sat next to her daughter in law and her son, not Power2Parent members, and was not coached through her public comment. Plaintiffs are not affiliated with Power2Parent.

**H. Defendants further the grooming, isolate then re-abuse Plaintiff at school.**

60.     The next day Candra Evans went to pick up R.E. from school.

61.     R.E. was visibly upset, and distressed and explained something had happened at school.

62.     R.E. started to shake and cry as if she had been assaulted.

63.     Walker, violating promises that R.E. would not be left alone with Hawes, pulled R.E. out of her class and met with her alone.

64.     Walker stated that he was sorry that it happened to her and that her mom had every right to be angry.

65.     He then told R.E. to not talk to anyone about their meeting.

66.     Walker then brought R.E. to Hawes' classroom and left her there alone with Hawes.

67.     Hawes was lying in wait for R.E. as she had already set up a chair near her desk for her.

68.     Hawes verbally attacked R.E. stating that she should have come to her first, told her she had never complained before, and that this was R.E.'s fault.

69.     Hawes never apologized for the assignment or making R.E. read, memorize and perform the monologue in front of her class.

70.     R.E. began to cry.

71.     Given the prior meetings, R.E. had been promised no one from CCSD would talk to her about the incident alone. As a minor who is deferential to her parents and teachers, she was very alarmed and confused by Walker's conduct.

72.     After making R.E. cry, Hawes initiated an offensive contact with R.E., re-victimizing R.E. all over again.

73.     Moreover, R.E. was falsely imprisoned during this meeting as she was not able to leave.

74.     R.E. left the meeting after being assaulted by Hawes in shock.

**I. Plaintiffs' Sixth Futile Meeting with CCSD Regarding the Subsequent Abuse**

75.     After finding out about this meeting, Candra Evans again contacted Petrie, an Associate Superintendent and Gutierrez, the Regional Superintendent. They asked for a meeting to which Candra Evans agreed.

76.     Candra Evans requested that Walker, the school principal, put someone in Hawes' classroom whenever R.E. was there for her safety. He said he would try, but made no promises.

**J. Plaintiffs' Seventh Futile Meeting with CCSD Regarding the Subsequent Abuse**

77.     At the next meeting, with Walker and Petrie, they apologized to R.E. for what happened. Candra Evans confronted Walker about why he left R.E. alone with Hawes.

///

11

78.     Walker also admitted in an audio recording that he told R.E. not to tell anyone about her meeting with him and Hawes.

79.     Since then, R.E. has been seeing both a psychiatrist and a therapist.

80.     In all, Plaintiffs have made over seven futile attempts to try and resolve their concerns with the Defendants.

81.     The Defendants are either victims to their own systemic break down and inability to care for the school children under their care, or have willfully conspired to cover up the abuse and protect a teacher that appears to have been grooming students to pornographic material and should no longer be teaching or left alone with children.

### III.  CAUSES OF ACTION

### <u>COUNT I</u>

### INTENTIONAL AND NEGLIGENT
### INFLICTION OF EMOTIONAL DISTRESS - PER SE

### (Defendants)

82.     Plaintiffs repeat, reallege, and incorporate by reference herein all preceding paragraphs as though fully set forth herein.

83.     "Extreme and outrageous conduct is that which is outside all possible bounds of decency and is regarded as utterly intolerable in a civilized community." *Maduike v. Agency Rent-A-Car*, 114 Nev. 1, 953 P.2d 24, 26 (1998).

84.     Defendants forced a child. R.E., to read, memorize and perform an sexually explicit monologue in front of her whole class as part of her classroom activities. This extreme and outrageous conduct was committed with the intentional or reckless disregard of causing Plaintiffs - a child - emotional distress.

85.     Performing pornography should never be a required high school classroom assignment.

86.     Hawes, a CCSD employee, reviewed and approved this sexually pornographic monologue before requiring R.E. to read, memorize and perform it, knowing or recklessly indifferent to the reality that it was unlawful, inappropriate and that Plaintiffs would be outraged.

87.     Moreover, R.E. is a minor, and intentional infliction or negligent infliction of emotional distress of a minor raises the allegations to an infliction of emotional distress *per se* status.

88.     Due to Defendants' acts, the Plaintiffs have suffered extreme emotional distress. R.E. has been seeing a psychiatrist and a therapist, she has been treating with them since after Defendants harmed her.

89.     As a result of the foregoing, Plaintiffs have been damaged in a sum which exceeds $50,000 and will be further determined at the trial of this matter.

## COUNT II

### VIOLATION OF FIRST AMENDMENT RIGHTS

### (Defendants)

90.     Plaintiffs repeat, reallege, and incorporate by reference herein all preceding paragraphs as though fully set forth herein.

91.     The First Amendment to the United State Constitution protects freedom of speech against state action, including the right to speak and the right to refrain from speaking. *Board of Education v. Barnette*, 319 U.S. 624, 645 (Murphy, J., concurring) (1943).

92.     Defendants forced a child. R.E., to read, memorize, speak and perform a disgusting pornographic monologue as part of her classroom activities.

93.     Hawes, a CCSD employee, reviewed, edited, and approved this pornographic monologue before requiring R.E. to read, memorize and act it out or be punished by her grade for the class being impacted.

94.     CCSD's actions violated Plaintiffs First Amendment rights.

95.    Moreover, CCSD prevented Candra Evans from speaking out in the assigned forum regarding the abuse.

96.    CCSD Board Members cut off Candra Evans preventing her from speaking, informed her that the assignment Hawes' had given the minor was profane, and that it was not proper to read in a public meeting.

97.    When Candra Evans raised further concerns, Dr. Jara cut her microphone and talked over her, preventing her from speaking. She was deprived of the ability to raise her concerns in the "public comment" section of the meeting.

98.    Moreover, she was prevented from speaking in the time and place assigned by Defendants for her to speak.

99.    By preventing Candra Evans from being able to speak, CCSD, and Dr. Jara, violated Candra Evans' First Amendment rights.

100.    As a result of the foregoing, Plaintiffs have been damaged in a sum which exceeds $50,000 and will be further determined at the trial of this matter.

## COUNT III

### VIOLATION OF FOURTEENTH AMENDMENT
### DUE PROCESS CLAUSE

**(Defendants)**

101.    Plaintiffs repeat, reallege, and incorporate by reference herein all preceding paragraphs as though fully set forth herein.

102.    The Due Process Clause of the Fourteenth Amendment provides that no State shall "deprive any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV, § 1. The U.S. Supreme Court has interpreted this guarantee "to include a substantive component, which forbids the government to infringe certain 'fundamental' liberty interests *at all*,

no matter what process is provided, unless the infringement is narrowly tailored to serve a compelling state interest." *Reno v. Flores*, 507 U.S. 292, 301–02, 113 S.Ct. 1439, 123 L.Ed.2d 1 (1993).

103.    When a state actor engages in "affirmative conduct" that places a plaintiff in danger and acts with "deliberate indifference" to a "known and obvious danger," the state actor has violated a plaintiffs' substantive due process right under the state created danger doctrine under the Fourteenth Amendment Due Process Clause of the U.S. Constitution. *Patel v. Kent School Dist.*, 648 F.3d 965, 974 (9thCir. 2011).

104.    Deliberate indifference is established when a state actor "disregarded a known or obvious consequence of his action." *Patel*, 648 F.3d at 974, quoting *Bryan Cnty. v. Brown*, 520 U.S. 397, 410, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997).

105.    "Generally, substantive due process analysis applies when state action is alleged to unreasonably restrict an individual's constitutional rights." *Mont. for Justice v. State ex rel. McGrath,* 334 Mont. 237, 146 P.3d 759, 767 (2006). *Las Vegas Convention & Visitors Auth. v. Miller*, 124 Nev. 669, 695–96, 191 P.3d 1138, 1155 (2008).

106.    Parents have the fundamental right "to direct the education and upbringing of one's children." *Washington v. Glucksberg*, 117 S. Ct. 2258, 2267 (1997).

107.    The U.S. Supreme Court has held that the right of parents to make decisions concerning the care, custody, and control of their children is a fundamental liberty interest protected by the Due Process Clause. *See Troxel v. Granville,* 530 U.S. 57, 66, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000) (plurality opinion) ("[I]t cannot now be doubted that the Due Process Clause of the Fourteenth Amendment protects the fundamental right of parents to make decisions concerning the care, custody, and control of their children.").

108.    After Defendants forced a child, R.E., to read, memorize and act out a disgusting pornographic monologue, Walker forced R.E. into a room with Hawes alone, even after R.E.'s parents asked him not to, and he agreed he would not.

109.    Forcing R.E. to interact with Hawes, at all, but even worse, alone in a place where she could be abused yet again, shows that Defendants affirmative conduct was either deliberately conspired, or was deliberately indifferent to the known danger to R.E. and the other children and Plaintiffs.

110.    Hawes, a CCSD employee, reviewed and approved this disgusting pornographic monologue before requiring R.E. to read, memorize, and act it out or be punished by CCSD.

111.    While CCSD has power over its curriculum, Defendants have no right to push pornography, or indoctrination on children or unreasonably restrict parents' rights to make decisions concerning the care, custody, and control of their children.

112.    Defendants' actions violated Plaintiffs' Fourteenth Amendment Substantive Due Process Rights.

113.    As a result of the foregoing, Plaintiffs have been damaged in a sum which exceeds $50,000 which will be further determined at the trial of this matter.

## **COUNT IV**

### **NEGLIGENCE**

### **(Defendants)**

114.    Plaintiffs repeat, reallege, and incorporate by reference herein all preceding paragraphs as though fully set forth herein.

115.    To state a negligence claim, a plaintiff must show: (1) the defendant owed a duty of care to the plaintiff; (2) the defendant breached that duty; (3) the breach was the legal cause of the

///

plaintiff's injury; and (4) the plaintiff suffered damages. *Scialabba v. Brandise Constr. Co., Inc.*, 112 Nev. 965, 921 P.2d 928, 930 (1996) (citation omitted).

116.    The Nevada Supreme Court has expressly stated that a special or heightened duty exists between teachers and students in *Lee v. GNLVCorp.*, 117 Nev. 291, 22 P.3d 209 (2001). "This court… has stated that, where a special relationship exists between the parties, such as with [a]… teacher-student…, an affirmative duty to aid others in peril is imposed by law. See *Sims v. General Telephone & Electronics*, 107 Nev. 516, 526, 815 P.2d 151, 157-58 (1991) (citing W. Page Keeton et al., *Prosser and Keeton on the Law of Torts*, § 56, at 376).

117.    The California Supreme Court explained the rationale behind the special teacher-student relationship, and the basis for the duty of schools, school districts and school personnel to protect students placed in their care. In addition, a school district and its employees have a special relationship with the district's pupils, a relationship arising from the mandatory character of school attendance and the comprehensive control over students exercised by school personnel, "analogous in many ways to the relationship between parents and their children." (*Hoff v. Vacaville Unified School Dist.* (1998) 19 Cal.4th 925, 935, 80 Cal.Rptr.2d 811, 968 P.2d 522, see *M.W. v. Panama Buena Vista Union School Dist.* (2003) 110 Cal.App.4th 508, 517, 1 Cal.Rptr.3d 673; *Leger v. Stockton Unified School Dist.*, (1988) 202 Cal.App.3d at 1448,1458-1459, 249 Cal.Rptr. 688.) Because of this special relationship, imposing obligations beyond what each person generally owes others under Civil Code section 1714, the duty of care owed by school personnel includes the duty to use reasonable measures to protect students from foreseeable injury at the hands of third parties acting negligently or intentionally.

///

///

17

118.    In Nevada[2], the Legislature has made a clear and unmistakable statement that school districts have an unequivocal responsibility to protect the students placed in their care, particularly when they have been made aware of a specific danger to specific students.

119.    Defendants breached their heightened duty of care to R.E. by failing to adequately protect her from Hawes. This deprived her of a safe and respectful learning environment.

120.    As a proximate result of Defendants' negligence acts and omissions, R.E. suffered immediate and irreparable injury, including physical, psychological, and emotional injury.

121.    As a result of the foregoing, Plaintiffs have been damaged in a sum which exceeds $50,000 which will be further determined at the trial of this matter.

## COUNT V

## NEGLIGENT SUPERVISION

### (Walker, Hager, CCSD)

122.    Plaintiffs repeat, reallege, and incorporate by reference herein all preceding paragraphs as though fully set forth herein.

123.    In Nevada, in the case of hiring an employee, the employer has a duty to use reasonable care in the training, supervision, and retention of his or her employees to make sure that the employees are fit for their positions. *See* 27 Am.Jur.2d *Employment Relationship* §§ 475–76 (1996).

124.    CCSD breached its duty to Plaintiffs as Hawes reviewed, approved, edited, helped rewrite, and required R.E. to read, memorize, and perform the pornographic monologue in front of her whole class.

///

---

[2] See NRS 388.121-1459.

125.    At any point, Hawes could have prevented this pornographic material from getting into the hands of children, but she refused. When confronted about this, Walker and CCSD did nothing.

126.    In fact, CCSD and one of CCSD's trustees even went so far as to attack Candra Evans publicly for bringing Defendants' actions to light.

127.    As a proximate result of these negligence acts and omissions, R.E. suffered immediate and irreparable injury, including physical, psychological, and emotional injury.

128.    As a result of the foregoing, Plaintiffs have been damaged in a sum which exceeds $50,000 which will be further determined at the trial of this matter.

**COUNT VI**

**NEGLIGENCE PER SE: VIOLATIONS OF N.R.S.**

**(Defendants)**

129.    Plaintiffs repeat, reallege, and incorporate by reference herein all preceding paragraphs as though fully set forth herein.

130.    In *Barnes v. Delta Lines*, 669 P.2d 709, 710 (1983), the Nevada Supreme Court held that "when a defendant violates a statute which was designed to protect a class of persons to which the plaintiff belongs, and thereby proximately causes injury to the plaintiff, such a violation constitutes negligence per se." See also, *Brannan v. Nevada Rock & Sand Co.*, 108 Nev. 23, 27, 823 P.2d 291, 293 (1992); *Atkinson v. MGM Grand Hotel*, 120 Nev. 639, 643 98 P.3d 678, 680 (2004).

131.    The U.S Supreme Court has "recognized that there is a compelling interest in protecting the physical and psychological well-being of minors. This interest extends to shielding minors from the influence of literature that is not obscene by adult standards. *Ginsberg v. New York,* 390 U.S. 629, 639–640, 88 S.Ct. 1274, 1280–81, 20 L.Ed.2d 195 (1968); *New York v. Ferber,* 458 U.S. 747, 756–757, 102 S.Ct. 3348, 3354–55, 73 L.Ed.2d 1113 (1982)."*Sable Communications of California, Inc. v. F.C.C.*, 109 S. Ct. 2829, 2836 (1989).

132.     Defendants violated NRS 200.508 (Abuse, neglect or endangerment of child), NRS 200.710 (Unlawful to use minor in producing pornography or as subject of sexual portrayal in performance), NRS 200.720 (Promotion of sexual performance of minor unlawful), NRS 201.230 (Lewdness with child under 16 years), and NRS 201.265 (Distributing harmful materials to minors)  in their effort to force R.E. to complete their obscene assignment.

133.     As a proximate result of Defendants' negligence acts and omissions, R.E. suffered immediate and irreparable injury, including physical, psychological, and emotional injury.

134.     As a result of the foregoing, Plaintiffs have been damaged in a sum which exceeds $50,000 and will be further determined at the trial of this matter.

**COUNT VII**

**VIOLATION OF TITLE IX - 20 USC § 1681(A)**

**(CCSD only)**

135.     Plaintiffs repeat, reallege, and incorporate by reference herein all preceding paragraphs as though fully set forth herein.

136.     CCSD is a recipient of federal funds and is therefore subject to Title IX requirements.

137.     20 USC § 1681(A) provides, "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance."

138.      The U.S. Supreme Court held in *Cannon v. University of Chicago* that Title IX is enforceable through an implied private right of action. 441 U.S. 677, 709, 99 S.Ct. 1946, 1964, 60 L.Ed.2d 560 (1979).

139.     "A teacher or other school employee's sexual harassment or sexual abuse of a student clearly constitutes discrimination under Title IX." *Franklin v. Gwinnett County Public Schools,* 503 U.S. 60, 75, 112 S.Ct. 1028, 117 L.Ed.2d 208 (1992).

140.     Liability is only appropriate for damages arising from the misconduct of the federal funding recipient in handling the problem of sexual harassment or abuse. *Davis v. Monroe County Board of Educ.,* 526 U.S. 629, 641, 119 S.Ct. 1661, 143 L.Ed.2d 839 (1999).

141.     Plaintiffs must establish: "(1) That a school official, who at a minimum had authority to address the alleged discrimination and to institute corrective measures on the recipient's behalf (2) had actual knowledge of the discrimination; and (3) that the school official's response failed to bring the violator into compliance and amounted to deliberate indifference to discrimination." *See Gebser v. Lago Vista Independent School Dist., 524 U.S. 274, 277, 118 S.Ct. 1989, 141 L.Ed.2d 277 (1998),* and *Davis v. Monroe County Board of Educ.,* 526 U.S. 629, 633, 119 S.Ct. 1661, 143 L.Ed.2d 839 (1999).

142.     If an institution either fails to act, or acts in a way which could not have reasonably been expected to remedy the violation, then the institution is liable for what amounts to an official decision not to end discrimination. *Gebser,* 524 U.S. at 290, 118 S.Ct. 1989.

143.     In cases of teacher-student harassment, Plaintiffs are not required to show "that a student was denied equal access to education." *Doe A. v. Green*, 298 F. Supp. 2d 1025, 1038 (D. Nev. 2004). As the U.S. Supreme Court expressly recognized "...that a student suffers extraordinary harm when subjected to sexual harassment and abuse by a teacher, and that the teacher's conduct is reprehensible and undermines the basic purposes of the educational system." *Gebser,* 524 U.S. at 292, 118 S.Ct. 1989.

144.     Here, Hager and Walker were provided notice of the actions that Hawes did and they said that they would take care of it, but they did not.

///

///

21

145.     Hager and Walker "took care of it" by forcing R.E. to meet with Hawes alone, after promising parents Walker would not leave them alone together. At the meeting, Hawes proceeded to verbally attack R.E., so much that she began to cry.

146.     CCSD did not take any action against Walker, Hager or Hawes for their parts in this situation despite their deliberate indifference to outright hostility towards R.E.

147.     As a result of the foregoing, Plaintiffs have been damaged in a sum which exceeds $50,000 and will be further determined at the trial of this matter.

**COUNT VIII**

**ASSAULT/BATTERY**

**(Hawes and CCSD)**

148.     Plaintiffs repeat, reallege, and incorporate by reference herein all preceding paragraphs as though fully set forth herein.

149.     To state a civil assault claim, a plaintiff must demonstrate that the defendant: (1) intended to cause harmful or offensive physical contact; and (2) the victim was put in apprehension of such contact. *See Sandoval v. Las Vegas Metro. Police Dep't*, 854 F.Supp.2d 860, 882 (D. Nev. 2012) (citing Restatement (Second) of Torts, § 21 (1965) ), *reversed on other grounds by Sandoval v. Las Vegas Metro. Police Dep't*, 756 F.3d 1154 (9th Cir. 2014). To state a battery claim, a plaintiff must demonstrate that the defendant: (1) intended to cause harmful or offensive contact; and (2) such contact occurred. *See Burns v. Mayer*, 175 F.Supp.2d 1259, 1269 (D. Nev. 2001) (citing Restatement (Second) of Torts §§ 13, 18 (1965).

150.     CCSD is liable for intentional torts committed by its employees during their employment, even if it is clear that those acts were not authorized by the School District. *Doe A. v. Green*, 298 F. Supp. 2d 1025, 1042 (D. Nev. 2004).

///

151.    After Plaintiffs reported Hawes' actions to Walker, the principal forced R.E. into a room with Hawes alone. Once there, Hawes verbally attacked R.E., so much that she was crying.

152.    It was during that meeting that Hawes intended and caused harmful and offensive contact with R.E. - thereby re-abusing her.

153.    CCSD is liable for Hawes' assault and battery of R.E. and Walker's intentional or grossly negligent assistance with that abuse.

154.    As a result of the foregoing, Plaintiffs have been damaged in a sum which exceeds $50,000 and will be further determined at the trial of this matter.

<u>**COUNT IX**</u>

**DEFAMATION PER SE**

**(Twitter user @AnGeL_OF-cHaOs)**

155.    Plaintiffs repeat, reallege, and incorporate by reference herein all preceding paragraphs as though fully set forth herein.

156.    In order to establish defamation, "a party must prove four factors: that there was a false statement about them, that it was published to a third party without privilege, that there was fault on the part of the publisher, and that it was either a per se defamation or that the defamation caused special harm." *Meyer v. Johnson*, 125 Nev. 1061, 281 P.3d 1201 (2009).

157.    "Certain classes of defamatory statements are considered so likely to cause serious injury to reputation and pecuniary loss that these statements are actionable without proof of damages. The four types of slander historically designated as defamatory *per se* are false statements made involving: (1) the imputation of a crime; (2) the imputation of having a loathsome disease; (3) imputing the person's lack of fitness for trade, business, or profession; and (4) imputing serious sexual misconduct. *See Carey v. Piphus,* 435 U.S. 247, 262 n. 18, 98 S.Ct. 1042, 1052 n. 18, 55 L.Ed.2d 252 (1978); *Branda v. Sanford,* 97 Nev. 643, 646, 637 P.2d 1223, 1225 (1981). No proof

of any actual harm to reputation or any other damage is required for the recovery of damages for these four kinds of slander. W. Page Keeton et al., *Prosser & Keeton on the Law of Torts* § 112, at 788 (5th ed. 1984). Otherwise stated, proof of the defamation itself is considered to establish the existence of some damages, and the jury is permitted, without other evidence, to estimate their amount." *K-Mart Corp. v. Washington*, 109 Nev. 1180, 1192–93, 866 P.2d 274, 282 (1993). (Internal quotation marks omitted).

158.    "A statement is defamatory when it would tend to lower the subject in the estimation of the community, excite derogatory opinions about the subject, and hold the subject up to contempt." *K-Mart Corp. v. Washington*, 109 Nev. 1180, 1191, 866 P.2d 274, 281–82 (1993).

159.    Twitter user @AnGeL_OF-cHaOs that goes by the moniker ThatB*tchSarah, who upon information and belief is a CCSD employee, repeatedly stated on twitter that R.E. wrote the pornographic monologue assignment, which is a lie.

160.    Despite being corrected by others, Twitter user @AnGeL_OF-cHaOs continued to make this false statement and even attacked Candra Evans multiple times calling her a liar.

161.    As the obscene monologue assignment violated several laws (NRS 200.508, NRS 200.710, NRS 200.720, NRS 201.265), Twitter user @AnGeL_OF-cHaOs' statements amount to claiming that R.E., a minor and non-public figure, is a criminal, which is defamation per se.

162.    As a result of the foregoing, Plaintiffs have been damaged in a sum which exceeds $50,000 and will be further determined at the trial of this matter.

## COUNT X

### RESPONDEAT SUPERIOR

### (CCSD Only)

163.    Plaintiffs repeat, reallege, and incorporate by reference herein all preceding paragraphs as though fully set forth herein.

164.    "[R]espondeat superior liability attaches only when the employee is under the control of the employer and when the act is within the scope of employment." *Molino v. Asher,* 96 Nev. 814, 817, 618 P.2d 878, 879 (1980). "Under respondeat superior, an employer may be held liable for both negligent and intentional acts of employees." *See, e.g., Busch v. Flangas,* 108 Nev. 821, 824, 837 P.2d 438, 440 (Nev.1992) (negligence); *Rockwell v. Sun Harbor Budget Suites,* 112 Nev. 1217, 1225, 925 P.2d 1175, 1180 (Nev.1996) (intentional tort); *Burns v. Mayer*, 175 F. Supp. 2d 1259, 1266 (D. Nev. 2001).

165.    Here, as shown above, Walker, Hager, and Hawes have committed negligent and intentional acts harming Plaintiffs.

166.    At all relevant times, Walker, Hager, and Hawes were CCSD employees and under the control of CCSD.

167.    Further, Walker, Hager, and Hawes all acted within the scope of their employment as the acts occurred at their place of employment, LVA (a CCSD high school) during school hours.

168.    CCSD is responsible for the acts of Walker, Hager, and Hawes.

169.    As a result of the foregoing, Plaintiffs have been damaged in a sum which exceeds $50,000 and will be further determined at the trial of this matter.

### IV.  PRAYER FOR RELIEF

**WHEREFORE, PLAINTIFFS pray for the following relief:**

1.    For declaratory judgment that Defendants' policies, practices, and conduct as alleged herein were/are in violation of Plaintiffs' rights under the United States Constitution, and Nevada law;

2.    For injunctive relief including a gag order and a restraining order, to ensure that Hawes or any of the Defendants are not allowed to further harm Plaintiffs, and not allowed to publicly comment on the case,  as was done the last time Candra Evans went to the school board;

3.      For damages in excess of $50,000 for an amount to be determined at trial;

4.      Punitive damages;

5.      For attorneys' fees as provided by law, including 42 U.S.C. § 1988;

6.      For costs of suit; and

7.      For such other and further relief as this Court deems just and proper.

DATED this 16th of December, 2022.

**LEX TECNICA LTD**

/s/ Vincent J. Garrido
VINCENT J. GARRIDO, ESQ.
Nevada Bar No. 15918
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145
vince@lextecnica.com
*Attorneys for Plaintiffs*

# EXHIBIT A

**LEX TECNICA LTD**
VINCENT J. GARRIDO, ESQ.
Nevada Bar No. 15918
10161 Park Run Drive
Suite 150
Las Vegas, Nevada 89145
vince@lextecnica.com
*Attorneys for Plaintiffs*

**EIGHTH JUDICIAL DISTRICT COURT**

**CLARK COUNTY, NEVADA**

\* \* \*

| | |
|---|---|
| CANDRA EVANS, individually and as parent to R.E., TERRELL EVANS, individually and as parent to R.E., <br><br>        Plaintiffs, <br> vs. <br><br> KELLY HAWES, JOSHUA HAGER, SCOTT WALKER, JESUS JARA CLARK COUNTY SCHOOL DISTRICT; and DOES 1 through 100; ROE ENTITIES 11 through 200, inclusive, <br><br>        Defendants. | CASE NO.: <br> DEPT. NO.: |

<u>**DECLARATION OF CANDRA EVANS**</u>

CANDRA EVANS declares as follows:

1. I, CANDRA EVANS, am a Plaintiff in this case, mother of R.E. (a minor), and am otherwise fully competent to testify to the facts contained in this declaration..

2. I have personal knowledge of the facts, activities and circumstances listed in the Verified Complaint,

3. I verify under penalty of perjury that the factual statements made in this Complaint regarding myself and my actions are true and correct.

**LEX TECNICA LTD**
**10161 PARK RUN DRIVE, SUITE 150**
**LAS VEGAS, NV 89145**
**(702) 518-5535**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**LEX TECNICA LTD**
**1061 PARK RUN DRIVE, SUITE 150**
**LAS VEGAS, NV 89145**
**(702) 518-5535**

4.   I further verify under penalty of perjury that the factual statements made in this Complaint

regarding my daughter and husband are true and correct.

Further your affiant sayeth not.

DATED this 16th day of December, 2022.

/s/ Candra Evans
CANDRA EVANS

2

 Gmail

**Kimber Foster <kfoster@lextecnica.com>**

---

## Fwd: Complaint and Declaration for electronic signature
1 message

---

**candraeevans@aol.com** <candraeevans@aol.com>                                  Fri, Dec 16, 2022 at 2:06 PM
Reply-To: candraeevans@aol.com
To: "kfoster@lextecnica.com" <kfoster@lextecnica.com>
Cc: "sam@lextecnica.com" <sam@lextecnica.com>, "david@lextecnica.com" <david@lextecnica.com>,
"terrellrevans@gmail.com" <terrellrevans@gmail.com>, "vince@lextecnica.com" <vince@lextecnica.com>


Yes, it is just fine to use my electronic signature.


Candra Evans  12/16/2022