**LEX TECNICA LTD**
ADAM R. KNECHT, ESQ.
Nevada Bar No. 13166
VINCENT J. GARRIDO, ESQ.
Nevada Bar No. 15918
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145
adam@lextecnica.com
vince@lextecnica.com

**THE AMERICAN CENTER
FOR LAW AND JUSTICE**
BENJAMIN P. SISNEY, ESQ.*
(D.C. Bar No. 1044721)
201 Maryland Avenue, NE
Washington, D.C.  20002
Telephone: (202) 546-8890
Facsimile: (202) 546-9309
bsisney@aclj.org
ABIGAIL SOUTHERLAND, ESQ.*
(TN. Bar. No. 026608)
625 Bakers Bridge Ave., Suite 105-121
Franklin, Tennessee 37067
Tel. 615-599-5572
Fax: 615-599-5180
asoutherland@aclj.org

*Admitted pro hac vice

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\* \* \*

| | |
|---|---|
| CANDRA EVANS, individually and as parent to R.E., TERRELL EVANS, individually and as parent to R.E., <br><br> Plaintiffs, <br> vs. <br><br> KELLY HAWES, JOSHUA HAGER, SCOTT WALKER, JESUS JARA, CLARK COUNTY SCHOOL DISTRICT, et al. <br><br> Defendants. | CASE NO.:  2:22-cv-02171-JAD-VCF <br><br><br> **PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO DISMISS** |

**PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO DISMISS**

Plaintiffs, Candra Evans, Terrell Evans, individually and as parents to R.E., by and through their attorneys, hereby file this response in opposition to Defendant(s), Kelly Hawes' ("Hawes"), Joshua Hager's ("Hager"), Scott Walker's ("Walker"), and Clark County School District's ("CCSD") (referred collectively herein as "CCSD Defendants") Motion to Dismiss (ECF No. 8), which seeks to dismiss the complaint filed by Plaintiffs in this action (the "Complaint"). This Response is made and based on the following Memorandum of Points and Authorities, together with the pleadings and papers on file herein, as well as an oral argument allowed by this Court.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    INTRODUCTION**

Plaintiffs seek protection and justice for the violations of their own rights, but especially those of R.E., a minor. Defendants required R.E. to read, memorize and perform the following monologue as a required part of her class and in front of her entire class:

> "I don't love you. It's not you, it's just (looks down) your dick. I don't like your dick or any dick in that case. I cheated Joe. We were long distance and I'm in college and me and this girl, my roommate, started having some drinks and you know, I thought it was a one time thing but then we started going out for coffee, and started sleeping in the same bed. I never thought it would get this far but God, it was like fireworks, and made me realize that with you it was always like a pencil sharpener that keeps getting jammed. I've tried to look at it from all different perspectives, but the truth is, I'm a fucking lesbian. I'll never love you or any man, or any fucking dick. I hope you find a nice straight girl because that's not me, and I'm tired of pretending that it is."

Since R.E.'s parents discovered the monologue, they, along with R.E., have sought appropriate redress from Defendants.  However, so far Defendants have not only not apologized for this assignment, but they have defended it and the teacher. Defendants have even gone so far as to attack R.E. for not preventing this from happening in the first place. Furthermore, Defendants prevented Plaintiff Candra Evans from reading the same monologue at the CCSD

2

Board meeting because it was too profane. Plaintiffs' claims are adequately pleaded and include the required factual support, and for this reason, Plaintiffs request that this Court deny Defendants' Motion to Dismiss.

## II.        LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests," *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) (abrogated on other grounds by *Bell Atl. Corp. v. Twombly,* 127 S. Ct. 1955, 1964–65 (2007). The standard for surviving a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) is that the plaintiff must provide "a short and plain statement of the claim showing the pleader is entitled to relief" which "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Sheppard v. David Evans & Assoc.,* 694 F.3d 1045, 1048 (9th Cir. 2012) (citing *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, L.Ed.2d 929 (2007), and *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)). "To meet this burden, 'the nonconclusory "factual content" 'of [Plaintiffs'] complaint and 'reasonable inferences from that content,' must be at least 'plausibly suggestive of a claim entitling the plaintiff to relief.'" *Disability Rights Montana, Inc. v. Batista,* 930 F.3d 1090, 1096–97 (9th Cir. 2019) (citing *Twombly,* 550 U.S. at 557, 127 S.Ct. 1955). The Court must "take all allegations of material fact as true and construe them in the light most favorable to the nonmoving party." *Steinle v. City and Cty. of S.F.,* 919 F.3d 1154, 1160 (9th Cir. 2019) (quoting *Parks Sch. of Bus., Inc. v. Symington,* 51 F.3d 1480, 1484 (9th Cir. 1995)).

///

///

///

III.    LEGAL ARGUMENT

A.    PLAINTIFFS HAVE SUFFICIENTLY ALLEGED FIRST AMENDMENT VIOLATIONS.

1.    Candra Evans Has Sufficiently Alleged a Violation of Her First Amendment Free Speech Rights (Count I of the Complaint).

This Court already held that Plaintiff Candra Evans (hereinafter "Plaintiff Candra") sufficiently pleaded a First Amendment free speech claim. Nonetheless, Defendants urge this Court to reverse itself and argue that the video of the School Board meeting demonstrating Plaintiff Candra speech was chilled, supports dismissal. Defendants disingenuously suggest that the video undermines the allegations in the Amended Complaint. They do not. As demonstrated below, what the video confirms is that Defendants – upon creating a limited public forum for the very purpose for which Plaintiff Candra sought to speak – muted Plaintiff Candra's microphone, interrupted her and instructed her *not* to continue reading the very content her daughter was forced to read and perform in the classroom thereby causing her to censor her own speech. What is undisputedly clear here is that Plaintiff Candra's speech was chilled.

The First Amendment serves as a vital "constitutional safeguard" and "was fashioned to assure unfettered interchange of ideas for the bringing about of political and social changes desired by the people." *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 269 (1964) (quoting *Roth v. United States*, 354 U.S. 476, 484 (1957)). It is well-established that the First Amendment's protections extend to speech made during public school board meetings. *Madison Joint School Dist. v. Wisconsin Employment Relations Comm'n*, 429 U.S. 167, 174-75 (1976)). "[A] public forum may be created by government designation of a place or channel of communication for use by the public at large for assembly and speech, for use by certain speakers, or for the discussion of certain subjects." *Cornelius v. NAACP Legal Def. & Educ. Fund*, 473 U.S. 788, 802 (1985)). A limited public forum is established when the government reserves a forum "for certain groups

4

or for the discussion of certain topics." *Rosenberger v. Rector & Visitors of Univ. of V*a., 515 U.S. 819, 829 (1995)). The public comment portion of a public school board meeting constitutes a limited public forum. *Leventhal v. Vista Unified School Dist.*, 973 F. Supp. 951, 957 (S.D. Cal. 1997) ("courts have regularly read *Madison* to have declared open school board meetings to be limited public fora"); *Baca v. Moreno Valley Unified Sch. Dist.*, 936 F. Supp. 719, 729 (C.D. Cal. 1996); *Ballard v. Patrick*, 163 F. App'x 584, 585 (9th Cir. 2006). "Once it has opened a limited forum, [] the State must respect the lawful boundaries it has itself set. The State may not exclude speech where its distinction is not 'reasonable in light of the purpose served by the forum.'" *Rosenberger*, 515 U.S. at 829 (quoting *Cornelius v. NAACP Legal Def. & Educ. Fund*, 473 U.S. 788, 804-806 (1985)). The purpose of allowing public comment "on matters of public interest in connection with the operation of the public schools," *Pickering v. Bd. of Education*, 391 U.S. 563, 568 (1968), at school board meetings is to provide residents with an opportunity to address matters of public interest relating to the operation of public schools, including governance, policies, procedures, occurrences, and events. In this case, Plaintiff Candra attended the CCSD Board meeting on May 12, 2022, to make school board members aware of events taking place within their jurisdiction and to express her concern over the sexually explicit homework assignment that her minor child was required to memorize and perform for a grade. For Plaintiff Candra, sufficiently expressing that concern necessitated a reading of the homework assignment given to her child to the School Board members.

Defendants assert that, despite their own actions to deter Plaintiff Candra from speaking – *i.e.,* muting her mic, interrupting her, and instructing her not to read further from the monologue –Plaintiff Candra was eventually permitted to speak once her speech was censored and thus no First Amendment violation occurred. Defendants alternatively argue that censorship and chilling of Plaintiff Candra's speech was permissible because – under the law – she would not have been

allowed to read the monologue because "prohibiting profane, abusive, or slanderous speech [is] constitutional." Def. Mot. Dismiss (ECF No. 36) at p. 7 (citing *Ballard v. Patrick*, 163 F. App'x 584, 584-85 (9th Cir. 2006)).

In regard to Defendants' first argument, the Ninth Circuit has established that "[i]n order to demonstrate a First Amendment violation, a plaintiff must provide evidence showing that 'by his actions [the defendant] deterred or chilled [the plaintiff's] speech and such deterrence was a substantial or motivating factor in [the defendant's] conduct.'" *Mendocino Envtl. Ctr. v. Mendocino Cnty.*, 192 F.3d 1283, 1300 (9th Cir. 1999) (quoting *Sloman v. Tadlock*, 21 F.3d 1462, 1469 (9th Cir. 1994)). Simply put, a plaintiff need not demonstrate his/her speech was *actually* inhibited or suppressed – only "that defendants 'intended to interfere with [his or her] First Amendment rights.'" *Id*. at 1300. Intent to inhibit speech "can be demonstrated through direct or circumstantial evidence." *Id.* at 1300-01 (citing *Magana v. Commonwealth of N. Mariana Islands*, 107 F.3d 1436, 1448 (9th Cir. 1997) (circumstantial evidence of intent is sufficient to survive summary judgment motion).

Here, Plaintiff Candra has alleged, and the video confirms that her speech was inhibited and suppressed, as she was never able to finish reading aloud the monologue to the School Board. In the video from May 12, 2022, (Def. Mot. Dismiss Memo, Exhibit 1 (ECF No. 36-1) at 24:44-25:18), it shows Plaintiff Candra making the following statements:

> I'm going to read you an assignment given to my 15-year-old daughter at a local high school. This will be horrifying for me to read to you, but that will give you perspective on how she must have felt when her teacher required her to memorize this and to act it out in front of her entire class. 'I don't love you. It's not you, it's just I don't like your [d***], or any [d***] in that case. I cheated Joe.'"

At this point Plaintiff Candra is cut off by the Chairwoman at 25:54: "Excuse me, Excuse me. I don't… Thank you so much. Thank you so much for your a… Thank you for your comment. Forgive me. We are not using profanity." Plaintiff Candra then reiterates her concerns to the Board

6

at 26:08: "The teacher required my daughter to read this and memorize this pornographic material." There is some further discussion that occurs between the Board members, and Plaintiff Candra joined in at 26:36, stating a third time that she is trying to express to the Board her concerns over the assignment given to her minor daughter: "If you don't want me to read it to you, what was that like for my 15-year-old daughter to have to memorize pornographic material and um and memorize it and portray it." It is at this point that Plaintiff Candra's microphone is muted. Eventually, Plaintiff Candra is allowed to continue speaking at 27:12, at which point she begins: "My daughter was forced to engage in the portrayal of this *blank activity* by her teacher." The video demonstrates that Plaintiff Candra altered her statement by self-censoring the word "pornographic," from her remarks, and ceasing any further reading of the monologue. From Plaintiff Candra's viewpoint, reading every word of the monologue, especially the offending words, was the only meaningful way to convey her message and demonstrate the horror of what it was like for her daughter to read them in a classroom of her peers.

Defendants' second argument – that their censorship was content-neutral and lawful – is also without merit. In the case cited and relied upon by Defendants, the court dismissed a general First Amendment challenge to a meeting rule that prohibited "profane, abusive or slanderous speech during the public comment portion of Board meetings." *Ballard v. Patrick*, 163 F. App'x 584, 584-85 (9th Cir. 2006). Unlike in *Ballard*, Defendants have not presented any policy in place, nor have they demonstrated that such a policy is content-neutral and reasonable. For example, in *Cipolla-Dennis v. Cty. Of Tompkins*, No. 1:18-cv- 1241, 2021 U.S. Dist. LEXIS 47728, at *24-25 (N.D.N.Y. Mar. 15, 2021) (citing *Ballard*) (a government policy prohibiting libel and slander was deemed constitutional in light of the compelling interest in promoting only truthful comments. Likewise, in *Scroggins v. City of Topeka*, 2 F. Supp. 2d 1362, 1372 (D. Kansas 1998), the court held that a rule against personal, rude or slanderous remarks was a reasonable content neutral

restriction because it is "does not target the expressive content of the message itself" and serves the significant governmental interest of having orderly meetings). While Nevada's Open Meeting Law provides that "[p]ublic bodies may adopt reasonable restrictions, including time limits on individual comment," "[NRS 241.020(3)(d)(7)] requires all restrictions on public comment to be expressed clearly on each agenda." *See* Aaron Ford, *Nevada Open Meeting Law Manual*, § 7.05 (12th ed. 2019). Defendants did not impose any restriction on the May 12, 2022 agenda. Plaintiff Candra's speech was appropriate in the forum it was presented, and no reasonable or compelling interest has been articulated by Defendants to justify the chilling of her speech.

Finally, the hypocrisy in Defendants' contradicting arguments must not go unnoted. On the one hand, Defendants assert that Plaintiff Candra's reading of the monologue was inappropriate before an audience of *adults*. On the other, Defendants assert that minor R.E.'s reading of the monologue was appropriate and even served a "legitimate pedagogical purpose," when performed in a classroom full of other *minors*. Def. Mot. Dismiss Memo, at 8. These arguments are not only absurd, they fly in the face of case law. *See supra.*

Construing all the allegations as true, Plaintiff Candra has more than sufficiently pled that her speech was chilled, that she was prevented from adequately addressing her concerns with the School Board and that the School Board fully intended to suppress her speech. Without a full reading the monologue her daughter had been forced to perform in class containing a description of a sexual act and discussion of male genitalia, Plaintiff Candra could not communicate, and the School Board could not understand, the extent of the inappropriate conduct by school officials.

### 2.    R.E. Has Sufficiently Alleged a Compelled Speech Claim (Count II of the Complaint).

The "right of freedom of thought protected by the First Amendment against state action includes both the right to speak freely and the right to refrain from speaking at all." *Wooley v. Maynard*, 430 U.S. 705, 714 (1977) (citing *W. Va. State Bd. of Educ. v. Barnette*, 319 U.S. 624,

8

633–34 (1943)). Importantly, the right against compelled speech is not limited to ideological messages. *Frudden v. Pilling*, 742 F.3d 1199, 1206 (9th Cir. 2014) (collecting cases including *Rumsfield v. Forum for Academic & Inst'l Rights, Inc.*, 547 U.S. 47, 62 (2006) ("[C]ompelled statements of fact . . . like compelled statements of opinion, are subject to First Amendment scrutiny.").

In *Barnette*, the court articulated the compelled speech doctrine and held that a school board could not require students to participate in the salute of the Flag and recite the Pledge of Allegiance. 319 U.S. at 626. The Court reasoned that such a policy "would mean that 'a Bill of Rights which guards the individual's right to speak his own mind, left it open to public authorities to compel him to utter what is not in his mind' . . . and 'transcends constitutional limitations on their power and invades the sphere of intellect and spirit which it is the purpose of the First Amendment to our Constitution to reserve from all official control.'" *Frudden v. Pilling*, 742 F.3d at 1203 (quoting *Barnette*, 319 U.S. at 642).

Following *Barnette*, courts have held that the government cannot require citizens to display a license plate containing a motto with which they disagree, *see Wooley*, 430 U.S. at 714, or force students to wear a uniform that contains the motto, "[t]omorrow's leaders," even where there is no offense to the statement alleged by plaintiffs, no penalty assessed against the students and no risk that a bystander would think the motto was selected by the student. *Frudden*, 742 F.3d at 1204

In the present case, R.E. was forced to memorize and speak in an open classroom of her peers a sexually explicit monologue. The monologue not only contained descriptions of male genitalia, as well as sexual references which R.E. did not even comprehend or know to object to, it also contained obscenity that, pursuant to the school's own policy, is prohibited in the classroom. Am. Compl., ¶¶ 20-21, 25. R.E. was given strict guidance for the assignment –

9

guidance which eliminated her option to select a different monologue – one that was not sexually explicit or objectionable – and she believed that if she did not perform the monologue, she would surely suffer a negative grade. *Id*. at ¶ 19, 24. In the face of R.E.'s well-plead compelled speech claim, Defendants struggle to articulate any sufficient argument for dismissal and, against the landscape of applicable of Ninth Circuit case law (much of which is conveniently ignored by Defendants in their motion to dismiss), wholly fail to make out a case for dismissal. As demonstrated below, each of Defendants' arguments are without merit.

First, Defendants argue that there is no "actual compulsion" here because "R.E. was not forced to adopt the viewpoint expressed in the monologue . . . and/or agree with" it. Def. Mot. Dismiss Mem. at 7–8. The Ninth Circuit has already rejected this argument in *Frudden*, 742 F.3d at 1205–06 (9th Cir. 2014). There, the court unequivocally stated that the proper inquiry into a compelled speech claim is *not* whether there is an affirmation of belief in the speech compelled. *Id*. at 1204. Instead, "the test is whether the individual is forced 'to be an instrument for fostering public adherence to an ideological point of view he finds unacceptable.'" *Id*. at 1205 (quoting *Wooley*, 430 U.S. at 715). In *Frudden*, the court acknowledged there was little risk that bystanders would actually believe that the student adopted the motto worn on their uniform, but nonetheless, found that the mere act of wearing it constituted compelled speech. 742 F.3d at 1204–05. The same was true in *Wooley* where citizens objected to displaying the words "Live Free or Die" on their license plate, along with all other citizens in New Hampshire. 430 U.S. at 707. Here, R.E. was forced to be an instrument for fostering and presenting a sexually explicit and intimate conversation and lifestyle with which she does not personally adhere to.

Defendants also argue that no compulsion was present here where R.E. did not explore other means to avoid reading and performing the monologue and/or R.E. did not "face consequences such as a failing grade." Def. Mot. Dismiss Mem. at 8, 11. Once again, in *Frudden*,

the Ninth Circuit rejected both of these considerations – finding neither was dispositive to a compelled speech claim. 742 F.3d at 1205 ("whether the RGES students had any alternative means to disclaim the school motto is not significant"); *see e.g.*, *id.* at 1206 ("that RGES did not discipline the Fruddens' children [for not wearing the uniform] **is irrelevant to their First Amendment challenge**") (emphasis added).

Compulsion – for the purposes of compelled speech – is not limited to circumstances involving immediate negative action. By its very definition, "compel" means to cause to do or occur by overwhelming pressure." *Compel*, *Merriam-Webster* (Revised ed. 2022). In R.E.'s case, she was given specific instructions for the assignment – instructions that prevented her from requesting a different monologue. Am. Compl. ¶ 21. R.E. also asserts that she believed that her compliance with those instructions were required to receive a positive grade in the class. *Id.* at ¶ 24. In other words, the threat of a negative or failing grade *was* present. As R.E. further alleges, she looked up to her teacher and did not want to disappoint her or to be cast in an unfavorable light. *Id.* at ¶ 22. R.E. knew that Defendant Hawes had reviewed and approved the sexually explicit monologue that she was required to perform. *Id.* at ¶ 23. Further, as her teacher, Defendant Hawes held supervisory and disciplinary power over her. State governments and courts alike have recognized this power differential between teacher and student that gives the teacher greater influence and persuasive power over the student.[1]

Defendants' argument that compulsion isn't present here simply because R.E. didn't vocalize an objection to her teacher is fatally flawed for yet another reason: it assumes that R.E. could have consented to the exposure of sexually explicit content. Under Nevada law, minor

---

[1] *See* https://www.cga.ct.gov/2007/rpt/2007-R-0710.htmcomell (compiling examples of various state statutes imposing criminal penalties on persons with "supervisory or disciplinary power" over a victim" including teachers who enter into sexual relationship with student); *see e.g.*, *Doe v. Ford*, 2006 U.S. Dist. LEXIS 108600 (D. Or.) (recognizing the power differential and rejecting any notion that a minor can consent to sexual interactions with an adult).

students cannot consent to such content. Nevada specifically mandates that a parent must be informed and provide consent for their minor child's/student's exposure to classroom instruction on sexual content or reproduction. *See* Nev. Rev. Stat. Ann. § 389.036 (requiring that parents must be presented with the curriculum and affirmatively consent to the teaching); *see e.g*., Am. Compl., ¶¶ 11-13. As explained in further detail below, consent by a parent was even more necessary and important here where the classroom instruction was not first vetted and/or approved by elected School Board members.

Defendants' third and last argument fares no better. Defendants suggest that school officials can compel *minor* students to complete sexually explicit and/or obscene class assignments without reprise or accountability and that the First Amendment actually protects their right to do so. *See* Def. Mot. Dismiss Mem. at 8 (citing *Brown v. Li*, 308 F.3d 939, 949 (9th Cir. 2002) for the proposition that "educator[s] can, consistent with the First Amendment, require that a student comply with the terms of an academic assignment); *id*. ("courts should abstain from using the First Amendment to countermand the 'considered judgment of professional educators'"); *id*. at 11 (citing *Brown*, 308 F.3d at 949 (same)).

As the case law relied upon by Defendants makes clear, students *may* only be asked to complete an assignment on a point of view with which they disagree "**so long as the requirements serve a legitimate pedagogical purpose**." *Brown*, 308 F.3d at 953 (emphasis added);[2] *see e.g., Axson-Flynn*, 356 F.3d at 1289–1290. Notably, Defendants fail to present a single case to support the ridiculous notion that the introduction of, and subsequent mandate that a *minor* student perform, sexually explicit and obscene content serves any legitimate pedagogical purpose. To the contrary, the Supreme Court has made quite clear that schools maintain a

---

[2] Defendants also cite Justice Souter's concurring opinion in *Bd. of Regents v. Southworth*, 529 U.S. 217, 242–243 (2000) (Southern, J., concurring). In *Southworth*, Justice Souter merely indicated that a case involving the use of a student activity fee to fund speech potentially offensive to a fraction of the students is distinguishable from compelled speech cases "on the basis of legitimate of government interest."

legitimate interest in *regulating exposure* to sexually explicit or vulgar speech – **especially in the high school setting**. *Bethel Sch. Dist. No. 403 v. Fraser*, 478 U.S. 675, 683 (1986). Obscenity is wholly inconsistent with "the 'fundamental values' of public school education." *Id*. at 685. Indeed, courts recognize a widespread "interest in "protecting minors from exposure to vulgar and offensive spoken language." *Id*. at 684 (citing *FCC v. Pacifica Foundation*, 438 U.S. 726 (1978)). Simply put, "a high school assembly or classroom is no place for a sexually explicit monologue directed towards an unsuspecting audience of teenage students." *Id*. at 685 (upholding school's disciplinary sanctions against speaker for exposing *minors* to lewd and indecent language (including an explicit sexual metaphor) in a high school setting).

Accordingly, Defendants' reliance on *Brown* and *Axson-Flynn* involving First Amendment claims by *adults* in the university school setting is inapplicable here. As the *Axson-Flynn* court noted, legitimate pedagogical concerns depend on age, maturity, and sophistication of students. 356 F.3d at 1280. And in *Axson-Flynn*, the Tenth Circuit did not – as Defendants suggest – hold that the student's "First Amendment Rights had not been violated through the program's required performances." Def. Mot. Dismiss Mem. at 10. The Court held that "a genuine issue of material facts [exists] as to whether Defendants' justification for the script adherence requirement was truly pedagogical or whether it was a pretext for religious discrimination." *Axson-Flynn*, 356 F.3d at 1293 (reversing the district court's grant of summary judgment in favor of the Defendants). Defendants have wholly failed to present a single case to support the ridiculous assertion that exposing *minor* children to sexually explicit content or obscene language satisfies a legitimate pedagogical interest of any kind.

Equally unpersuasive is Defendants' reliance on cases involving a student's objection to an appropriate and non-obscene assignment directly connected to and part of previously approved

///

13

curriculum standards.[3] *See* Def. Mot. Dismiss Mem. at 8 (citing and analyzing *Wood v. Arnold*, 915 F.3d 308, 312 (4th Cir. 2019) (involving student's compelled speech claim relating to objection to fill in the blanks for an assignment on religion); *id*. at 10–11 (citing *Settle v. Dickson Cnty. Sch. Bd*., 53 F.3d 152, 155–56 (6th Cir. 1995) (involving free speech claim – not a compelled speech claim). In *Wood* the court declined to find compelled speech because "the assignment did not require Wood to profess or accept the tenets of Islam. The students were not asked to recite the shada, nor were they required to engage in any devotional practice." 915 F.3d at 319 (citing *Barnette*, 319 U.S. at 631 (distinguishing between compelling students to declare a belief through mandatory recital of the pledge of allegiance, and 'merely . . . acquaint[ing] students' with the flag salute so that they may be informed as to what it is or even what it means"). Instead, Wood was required "to write only two words to demonstrate her understanding of the world history curriculum." *Id*.

R.E.'s compelled speech claim is well-plead and supported by long-standing case law. Defendants have provided this Court with absolutely no legal authority on point to support dismissal of R.E.'s claim.

///

///

///

*///*

---

[3] Courts recognize the difference between suitable curriculum approved by school officials and content selected by "individual teachers." As the Seventh Circuit has explained,

> Parents have a vital interest in what their children are taught. Their representatives have in general prescribed a curriculum. There is a compelling state interest in the choice and adherence to a suitable curriculum for the benefit of our young citizens and society. It cannot be left to individual teachers to teach what they please.

*Palmer v. Bd. of Educ.*, 603 F.2d 1271, 1274 (7th Cir. 1979); *accord Boring v. Buncombe Cnty. Bd. of Educ.*, 136 F.3d 364, 370 ("[T]he school, not the teacher, has the right to fix the curriculum.").

## B. PLAINTIFFS HAVE ADEQUATELY PLEADED STATE LAW CLAIMS UPON WHICH RELIEF MAY BE GRANTED

### 1.   Plaintiffs Have Adequately Pleaded Their Claim for Intentional and Negligent Infliction of Emotional Distress - Per Se (Count IV of the Complaint)

"Generally, the elements of [Intentional Infliction of Emotional Distress] are (1) extreme and outrageous conduct with either the intention of, or reckless disregard for, causing emotional distress, (2) the plaintiff's having suffered severe or extreme emotional distress and (3) actual or proximate causation." *Star v. Rabello*, 97 Nev. 124, 125, 625 P.2d 90, 91–92 (1981). "Extreme and outrageous conduct is that which is outside all possible bounds of decency and is regarded as utterly intolerable in a civilized community." *Maduike v. Agency Rent-A-Car*, 114 Nev. 1, 953 P.2d 24, 26 (1998). In *Shoen*, the Nevada Supreme Court noted that "[i]f a bystander can recover for the negligent infliction of emotional distress, it is only logical that the direct victim be permitted the same recovery." *Shoen v. Amerco*, 111 Nev. 735, 896 P.2d 469, 477 (1995). While not recognizing a "new cause of action for direct negligent infliction of emotional distress, the Court held that 'the direct victim should be able to assert a negligence claim that includes emotional distress as part of the damage suffered as well as an intentional tort cause of action.'" *Id* (citing, *Prescott v. Slide Fire Sols., LP*, 410 F. Supp. 3d 1123, 1143 (D. Nev. 2019)).

Here, the Complaint states a prime facie case of intentional infliction of emotional distress. First, Defendant Hawes' conduct was extreme and outrageous with either the intention or reckless disregard for causing emotional distress. Hawes required a child to read, memorize, and act out pornography as part of a required class assignment. She did this knowing exactly what was in the assignment, as she helped the student rewrite it, and still required R.E. to read, memorize, and act it out in front of her whole class. Jara, CCSD, and Walker all admitted that the language of the

///

15

assignment was obscene by their actions[4] and further admitted that the language was at least vulgar[5] in their Motion to Dismiss. Second, Plaintiffs have alleged that R.E. has suffered severe and extreme emotional distress due to the Defendants' actions. Noting that Defendants actions were so severe and R.E.'s emotional distress is so extreme that R.E. has been treating with a psychiatrist and a therapist. No child should have been put through that by a trusted teacher and then later been attacked by the teacher and administrators at her school for informing the public, through her parents, of Defendants awful actions and ratification of those actions. Third, Plaintiffs have shown that R.E. 's emotional distress is actually and proximately caused by Hawes' actions and the ratification of Hawes' actions. But for Hawes' actions and the other Defendants ratifying her actions, R.E. would not have suffered such emotional distress.

Performing pornography should never be a child's required classroom assignment. As Plaintiffs have adequately pleaded this cause of action, Plaintiffs request that this Court deny Defendants' Motion to Dismiss.

### 2. Plaintiffs Have Adequately Pleaded Their Claim for Negligence (Count V of the Complaint)

To prevail on a claim for negligence, a plaintiff must show: (1) the defendant owed a duty of care to the plaintiff; (2) the defendant breached that duty; (3) the breach was the legal cause of the plaintiff's injury; and (4) the plaintiff suffered damages. *See Scialabba v. Brandise Constr. Co., Inc.*, 112 Nev. 965, 921 P.2d 928, 930 (1996) (citation omitted). The Nevada Supreme Court has expressly stated that a special or heightened duty exists between teachers and students in *Lee v. GNLVCorp.*, 117 Nev. 291, 22 P.3d 209 (2001). "This court… has stated that, where a special

---

[4] Defendant Jara turned off Plaintiff Candra Evans microphone during a public meeting, when the Board noted admitted the material assigned to R.E. violated rules of decorum and was profane. Mr. Walker also admitted during private meetings as preserved in audio recording, that he would be upset by the assignment if it were assigned to his child.

[5] See Defendants' Motion to Dismiss, p. 3:21-22.

16

relationship exists between the parties, such as with [a]… teacher-student…, an affirmative duty to aid others in peril is imposed by law. *See Sims v. General Telephone & Electronics*, 107 Nev. 516, 526, 815 P.2d 151, 157-58 (1991) (citing W. Page Keeton et al., Prosser and Keeton on the Law of Torts, § 56, at 376).

Here, relief on a claim of negligence is more than plausible from the facts alleged in the Complaint.  As a student, each Defendant had a heightened duty to keep R.E. safe. Defendants breached that duty of care by failing to protect R.E. from Hawes. This is shown by their failure to remain apprised of the assignment being made by Hawes, by forcing R.E. into a meeting with Hawes alone after Hawes forced R.E. to complete her vulgar monologue assignment, and by Hawes forcing R.E. to complete the vulgar monologue assignment in the first place. Defendants' breach was the cause of R.E. physical, psychological, and emotional injuries, and Plaintiffs have been damaged due to Defendants' breach. R.E. is currently seeing a psychiatrist and a therapist to seek to repair the damages caused by Defendants. As Plaintiffs can show a prima facie case for Negligence, Plaintiffs request that this Court deny Defendants' motion to dismiss.

### 3.    Plaintiffs Have Adequately Pleaded Their Claim for Negligent Supervision (Count VI of the Complaint)

"To establish negligent supervision, a plaintiff must prove (1) defendant owed a duty of care to the plaintiff; (2) defendant breached that duty by improperly supervising an employee even though defendant knew, or should have known, of the employee's dangerous propensities; (3) the breach was the cause of plaintiff's injuries; and (4) damages. *Peterson v. Miranda*, No. 2:11-cv-01919-LRH-PAL, 57 F. Supp. 3d, 1271, 1280 (D. Nev. Sept. 29, 2014) (citing *Hall v. SSF, Inc.* 112 Nev. 1384, 930 P.2d 94, 99 (Nev. 1996)). Negligent supervision claims 'are based upon the premise that an employer should be liable when it places an employee, who it knows or should have known behaves wrongfully, in a position in which the employee can harm someone

else.' *Id.* (quotations omitted). Importantly, an employee's wrongful behavior 'does not in and of itself give rise to a claim for negligent . . . supervision.' *Colquhoun v. BHC Montevista Hosp., Inc.*, No. 2:10-cv-0144-RLH-PAL, 2010 U.S. Dist. LEXIS 57066, at *10 (D. Nev. June 9, 2010) (citing *Burnett v. C.B.A. Sec. Serv.*, 107 Nev. 787, 820 P.2d 750 (Nev. 1991))." *J.W. v. Clark Cty. Sch. Dist.*, No. 2:19-cv-00965-RFB-EJY, 2022 U.S. Dist. LEXIS 168564, at *40 (D. Nev. Sep. 19, 2022).

Further, school districts have a responsibility to supervise their employees and move to suspend or revoke their licenses[6] if they violate the law.[7] A teacher can also have their initial or renewal license denied for conviction of an offense involving moral turpitude (like the ones discussed below in Negligence Per Se) or even just a substantiated report of abuse of a child.[8] Additionally, a teacher can have their work conditions impacted, up to and including termination, by a substantiated report of abuse of a child.[9] The Nevada Legislature was so concerned about this that it prohibited any agreement which "affects the ability to obtain or provide information relating to suspected abuse or sexual misconduct."[10]

Plaintiffs adequately pleaded negligent supervision. Defendants owed R.E. a duty to supervise staff associated with her education. Defendants breached that duty by failing to protect R.E. from Hawes' required pornographic monologue performance and thereafter including when Walker brought R.E. to meet with Hawes and left R.E. alone with Hawes, where R.E. was assaulted and battered. Defendants knew of Hawes' dangerous propensities when they forced R.E. to meet with her by herself even after informing R.E.'s parents they would not do that. Defendants' breach caused R.E.'s physical, psychological, and emotional injuries which are

---

[6] See NRS 391.322.
[7] See NRS 391.330.
[8] See NRS 391.033(6).
[9] See NRS 391.104.
[10] See NRS 391.920.

currently being treated by both a psychiatrist and a therapist and R.E. is currently seeking treatment to attempt to repair the damages caused by Defendants. As Plaintiffs can and will show a prima facie case for Negligent Supervision, and therefore request that this Court deny Defendants' Motion to Dismiss.

### 4. Plaintiffs Have Adequately Pleaded their Claim for Assault/Battery (Count VII of the Complaint)

To state a civil assault claim, a plaintiff must demonstrate that the defendant: (1) intended to cause harmful or offensive physical contact; and (2) the victim was put in apprehension of such contact. *See Sandoval v. Las Vegas Metro. Police Dep't*, 854 F.Supp.2d 860, 882 (D. Nev. 2012) (citing Restatement (Second) of Torts, § 21 (1965), *reversed on other grounds by Sandoval v. Las Vegas Metro. Police Dep't*, 756 F.3d 1154 (9th Cir. 2014). To state a battery claim, a plaintiff must demonstrate that the defendant: (1) intended to cause harmful or offensive contact; and (2) such contact occurred. *See Burns v. Mayer*, 175 F.Supp.2d 1259, 1269 (D. Nev. 2001) (citing Restatement (Second) of Torts §§ 13, 18 (1965). CCSD is liable for intentional torts committed by its employees during their employment, even if it is clear that those acts were not authorized by the School District. *Doe A. v. Green*, 298 F. Supp. 2d 1025, 1042 (D. Nev. 2004).

Plaintiffs adequately pleaded their claims for assault/battery. R.E. was forced to meet with Hawes alone by Defendants. After verbally attacking R.E. due to Hawes' pornographic assignment coming to light, Hawes reached out and grabbed and held R.E. Hawes intended to cause this harmful and offensive contact. R.E. was both put in an apprehension of Hawes' harmful and offensive contact and Hawes did in fact harmfully and offensively contact her. As Plaintiffs can show a prima facie case for their assault/battery claim, Plaintiffs request that this Court deny Defendant's motion to dismiss.

///

///

## C.   DEFENDANT JARA SHOULD NOT BE DISMISSED

Defendants demand that Jara be dismissed because Plaintiffs only have one allegation against him, that he violated Candra Evans First Amendment rights. Defendants argue that Jara is not liable for the actions of members of a school district solely because of his position and Plaintiffs agree. Jara is responsible for his own actions and/or failure to act. In the context of a school district, a superintendent may be liable "if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them." *Riley's Am. Heritage Farms v. Claremont Unified Sch. Dist.*, No. EDCV 18-2185 JGB (SHKx), 2019 U.S. Dist. LEXIS 153838, at *23 (C.D. Cal. Mar. 6, 2019) (citing *Maxwell v. City of San Diego*, 708 F.3d 1075, 1086 (9th Cir. 2013). Jara participated in the violation of Candra Evans' First Amendment rights, which means that he obviously knew of the violation and he failed to act to prevent it. As Jara participated in violating Ms. Evan's rights, Jara is correctly a defendant and should remain one. For this reason, Plaintiffs request that Defendants' Motion to Dismiss be denied.

## D.   DEFENDANTS' IMMUNITY ARGUMENTS ARE NOT GROUNDS FOR 12(b)(6) DISMISSAL

### 1.   Qualified Immunity

Defendants seek dismissal of the Complaint based on arguments of qualified immunity; however, dismissal upon an assertion of qualified immunity is not appropriate at the motion to dismiss stage. "Those issues must be resolved at summary judgment or at trial." *Morley v. Walker*, 175 F.3d 756, 761 (9th Cir. 1999). This alone should defeat Defendants' Motion to Dismiss on this issue. Further, "[q]ualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 740 (2011) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982)). A right is clearly established "when, at the

time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable official would [have understood] that what he is doing violates that right.' *Anderson* v. *Creighton*, 483 U.S. 635, 640, 107 S. Ct. 3034, 97 L. Ed. 2d 523 (1987)." *Ashcroft*, 563 U.S. at 741. The Nevada Supreme Court has applied qualified immunity in the context of federal-law claims. *Mack v. Williams*, No. 81513, 2022 Nev. LEXIS 87, at *35 (Dec. 29, 2022).

As their defense, Defendants argue that there are no cases that "squarely govern[] the specific facts at issue" here. Def. Mot. Dismiss Memo, at 14. The Supreme Court has made clear, however, that the inquiry "does *not* require a case directly on point." *Ashcroft*, 563 U.S. at 741 (citing *Malley v. Briggs*, 475 U.S. 335, 341 (1986) (Emphasis added).

In regard to Candra Evans' First Amendment claim, Defendants provide no persuasive argument for qualified immunity here. As demonstrated above, when the government creates a limited public forum, it cannot censor speech falling appropriately within that forum at its behest. Plaintiff Candra's speech fit squarely within the purpose of the limited forum of a school board meeting. No school board policy, nor any case law on point, has been presented here to justify the actual and/or intended censoring of Plaintiff Candra's speech.

In regard to R.E.'s compelled speech claim, there is no unsettled question of law here. Case law, including *Frudden* governing this very circuit, makes undisputedly clear that students maintain their First Amendment rights in the classroom and that a student can't even be required to wear a seemingly harmless motto on their uniform. Further, the right to be free from a teacher's requirement that a minor student perform sexually explicit content is not complicated. Both statutory and case law are also undisputedly clear that minor students cannot and should not be exposed to sexually explicit content in the classroom unless it is part of an approved curriculum chosen by elected officials and parents have their consent. It should not go unnoticed that

Defendants fail to present a single case to support their defense. Under no circumstances has a court held that a teacher's introduction of sexually explicit content in a high school classroom is a proper class assignment and/or serves a legitimate pedagogical interest.  Case law is also clear that high school students (minors) are treated differently than college students (adults) where obscenity and similar content is concerned.

As shown above, Plaintiffs have adequately pleaded that the Defendants have violated the constitutional rights of the Plaintiffs and those constitutional rights have been clearly established since long before Defendants' actions. As Plaintiffs have adequately pleaded their causes of action and this defense is not appropriate for a Motion to Dismiss, Plaintiffs request that this Court deny Defendants' Motion to Dismiss.

### 2. Discretionary Immunity

Defendants claim discretionary immunity per NRS 41.032. "Nevada jurisprudence provides a two-part test for determining whether discretionary-function immunity under NRS 41.032 applies to shield a defendant from liability. *Martinez v. Maruszczak*, 123 Nev. 433, 445-47, 168 P.3d 720, 728-29 (2007); *Butler v. Bayer*, 123 Nev. 450, 465-66, 168 P.3d 1055, 1066 (2007). Under the two-part test, a government defendant is not liable for an allegedly negligent decision if the decision (1) involves an "element of individual judgment or choice," and (2) is "based on considerations of social, economic, or political policy." *Martinez*, 123 Nev. at 446-47, 168 P.3d at 729." *Clark Cty. Sch. Dist. v. Payo*, 133 Nev. 626, 631-32, 403 P.3d 1270, 1274-75 (2017). In Nevada, a discretionary-function immunity defense applies to "conduct involving an executive or planning function characterized by the exercise of a high degree of official judgment or discretion." *Clark Cty. Sch. Dist. v. Payo*, 133 Nev. 626, 633, 403 P.3d 1270, 1276 (2017). *Butler*, 123 Nev. 450, 465-66, 168 P.3d 1055, 1066 (recognizing that the purpose of the waiver of sovereign immunity is "to compensate victims of government negligence in circumstances like

those in which victims of private negligence would be compensated" and rejecting defendants' discretionary-function-immunity defense because the decision to leave a disabled paroled prisoner in a precarious situation, while discretionary, was not policy-based and thus not entitled to discretionary-function immunity (quoting *Harrigan v. City of Reno*, 86 Nev. 678, 680, 475 P.2d 94, 95 (1970))). *Clark Cty. Sch. Dist.*, 133 Nev. at 632. "If the injury-producing conduct is an integral part of governmental policy-making or planning, if the imposition of liability might jeopardize the quality of the governmental process, or if the legislative or executive branch's power or responsibility would be usurped, immunity will likely attach under the second criterion." *Martinez v. Maruszczak*, 123 Nev. 433, 446, 168 P.3d 720, 729 (2007).

Here, Defendants need to prove that the actions of the Hawes, Hager, Walker, and Jara were both discretionary and policy based, but they cannot. It is likely that they can show that their actions included the use of their own discretion, but they cannot show nor have they alleged that their conduct involved "an executive or planning function characterized by the exercise of a high degree of official judgment or discretion." Defendants now argue that the decision to require a child to memorize, read and perform the profane monologue was made with their powers to select curriculum without any support. Nowhere do they show that their curriculum calls for a vulgar monologue to be performed by children. Nowhere is there proof that this graded assignment that would impact R.E. grades and academic success was actual called for by the curriculum defendants chose. Curriculums are written and so it should be easy for Defendants to show where it called for a vulgar monologue written with the help of a CCSD teacher. More likely, the defendants went outside of their selected curriculum too push this horrible assignment. To agree with defendants' argument would be to agree that anything that CCSD wants to subject children to is fair game. Therefore, defendants unsupported claim that their curriculum called for this profane monologue and thus was actually a policy-based decision must fail. By failing to prove

the second part of the test for discretionary-function immunity, Defendants cannot have discretionary-function immunity. As Defendants have failed to show their actions are entitled to discretionary-function immunity per NRS 41.032, Plaintiffs request that this Court deny Defendants' Motion to Dismiss.

## IV.   CONCLUSION

For the above reasons, Plaintiffs request that this Court deny Defendants' Motion to Dismiss in its entirety.

DATED this 7th day of June, 2023.

**LEX TECNICA LTD**

*/s/Vincent J. Garrido*
ADAM R. KNECHT, ESQ.
Nevada Bar No. 13166
VINCENT J. GARRIDO, ESQ.
Nevada Bar No. 15918
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145
vince@lextecnica.com
adam@lextecnica.com

**THE AMERICAN CENTER
FOR LAW AND JUSTICE**

BENJAMIN P. SISNEY, ESQ.*
(D.C. Bar No. 1044721)
201 Maryland Avenue, NE
Washington, D.C.  20002
Telephone: (202) 546-8890
Facsimile: (202) 546-9309
bsisney@aclj.org
ABIGAIL SOUTHERLAND, ESQ.*
(TN. Bar. No. 026608)
625 Bakers Bridge Ave., Suite 105-121
Franklin, Tennessee 37067
Tel. 615-599-5572
Fax: 615-599-5180
asoutherland@aclj.org

*Attorneys for Plaintiffs*

*Admitted pro hace vice

24

## CERTIFICATE OF SERVICE VIA CM/ECF

I hereby certify that on this 7th day of June, 2023, I did serve, via Case Management/Electronic Case Filing, a copy of the above and foregoing PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO DISMISS addressed to:

Tami D. Cowden: cowdent@gtlaw.com, tami-cowden-3822@ecf.pacerpro.com, rosehilla@gtlaw.com

Kara B. Hendricks: hendricksk@gtlaw.com, escobargaddie@gtlaw.com, spauldingc@gtlaw.com, kara-hendricks-7977@ecf.pacerpro.com, neyc@gtlaw.com, Steph.Morrill@gtlaw.com, flintza@gtlaw.com, sheffieldm@gtlaw.com

Abigail A Southerland: asoutherland@aclj.org

**AND**

VIA ELECTRONIC SERVICE by emailing a copy of the above and foregoing Plaintiffs' Response to Defendants' Motion to Dismiss addressed to:

Mark E. Ferrario
Greenberg Traurig, LLP
10845 Griffith Peak Drive, Suite 600
Las Vegas, NV 89135
ferrariom@gtlaw.com

Benjamin Sisney
American Center for Law and Justice
201 Maryland Avenue, NB
Washington, DC 20002
bsisney@aclj.org

/s/ Kimber Foster
An Employee of Lex Tecnica LTD

25