# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

Candra Evans, individually and as a parent to R.E.; and Terrell Evans, individually and as a parent to R.E.,

       Plaintiffs

v.

Kelly Hawes, Joshua Hager, Scott Walker, and Clark County School District,

       Defendants

Case No.: 2:22-cv-02171-JAD-DJA

**Order Denying Plaintiffs' Motions for Reconsideration**

[ECF No. 64, 67]

     Candra and Terrell Evans, on behalf of themselves and their minor daughter R.E., initiated this lawsuit against the Clark County School District (CCSD), former Superintendent Jesus Jara, Principal Scott Walker, Assistant Principal Joshua Hager, and teacher Kelly Hawes for requiring R.E. to perform a monologue that contained explicit language in her high-school theater class back in 2022.  When R.E.'s mom Candra discovered the assignment and voiced her concerns about its content at a public school-board meeting, the board stopped her from reading the profane language contained in the monologue out loud.  As relevant here, I previously dismissed Candra's First Amendment claim against CCSD and Jara for the school board's inference with her speech at the meeting, finding that her version of events was contradicted by the video recording of her comments and that the school board's censorship of her language was reasonable and content neutral.  I also dismissed R.E.'s negligence and negligent-supervision claims because the plaintiffs failed to sufficiently allege that this explicit-monologue scenario, or any harm that it caused, was foreseeable.

     The plaintiffs now move for reconsideration of those two holdings.  They argue that Candra's First Amendment claim should be revived because newly discovered evidence shows

that CCSD didn't have a policy in place prohibiting profanity when Candra attended the board meeting, and that new evidence of profane language being tolerated at board meetings allegedly suggests that the board's actions in her case were viewpoint based.[1]  They also theorize that I erred in concluding that they failed to adequately allege that the harm caused by the defendants' negligence was foreseeable.[2]  I deny both motions because plaintiffs haven't shown that any new evidence or clear error warrants reconsideration.

**Discussion**[3]

**A.     Reconsideration standard**

A district court "possesses the inherent procedural power to reconsider, rescind, or modify an interlocutory order for cause seen by it to be sufficient" so long as it still has jurisdiction.[4]  A party seeking reconsideration must set forth "some valid reason why the court should reconsider its prior decision" by presenting "facts or law of a strongly convincing nature."[5]  Reconsideration is appropriate if the court "(1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law."[6]  "A motion for reconsideration is not an avenue to re-

---

[1] ECF No. 64.

[2] ECF No. 67.

[3] The parties are familiar with the facts of this case, so I don't repeat them here.  I instead incorporate herein the extensive overview of the plaintiffs' allegations contained in my prior order granting in part the defendants' motion to dismiss.  *See* ECF No. 62 at 3–6.

[4] *City of L.A., Harbor Div. v. Santa Monica Baykeeper*, 254 F.3d 882, 885 (9th Cir. 2001) (quotation and emphasis omitted); *see also Smith v. Clark Cty. Sch. Dist.*, 727 F.3d 950, 955 (9th Cir. 2013); L.R. 59-1.

[5] *Frasure v. United States*, 256 F. Supp. 2d 1180, 1183 (D. Nev. 2003).

[6] *Sch. Dist. No. 1J v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993).

litigate the same issues and arguments upon which the court already has ruled,"[7] and it may not be based on arguments or evidence that could have been raised previously.[8]

**B.     Candra's newly discovered evidence doesn't warrant reconsideration of her First Amendment claim.**

Candra contends that newly discovered evidence justifies reconsideration of her First Amendment claim challenging the school board's refusal to let her use profanity during the public-comment period of a board meeting.  She points to three pieces of evidence that she contends changes the calculus of my decision: (1) proof that the school-board policy prohibiting profanity that CCSD lauded in its reply brief wasn't in place during the meeting Candra attended; (2) a video recording in which a board member uses the same word ("dick") that Candra was muted for during a public board meeting; and (3) Jara's deposition testimony in which he recalled that others have used language inappropriate to board-meeting settings but couldn't recall whether anyone else had been similarly muted.

*1.     CCSD's lack of a policy prohibiting profane speech does not change my analysis.*

In response to Candra's argument that no school policy prohibited profanity in school-board meetings, I noted in my prior order that CCSD did provide such a policy in its reply brief—Governance Policy 11, which CCSD implied was in place at the time of Candra's meeting.[9]  As it turns out, CCSD didn't check the effective date of that policy and, after briefing on the motion to dismiss had concluded, the plaintiffs learned that a very different policy

---

[7] *Brown v. Kinross Gold, U.S.A.*, 378 F. Supp. 2d 1280, 1288 (D. Nev. 2005).

[8] *See Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000).

[9] *See* ECF No. 62 at 11; ECF No. 39 at 6–7.

omitting the prohibition on profane language was in place when Candra spoke.[10]  She claims that the absence of this policy warrants reconsideration.

But Candra overstates the import that I placed on that policy when dismissing her free-speech claims.  I mentioned it only to convey that Candra's argument about a lack of policy appeared to be untrue.  We now know that it wasn't, but that doesn't disturb my actual holding on Candra's First Amendment claim.  I held that, in light of what was shown in the video recording of Candra's public comment, Candra could not sufficiently allege that the school board's decision to prevent her from using explicit language "silence[d] any viewpoint Candra wished to convey," and that "Candra was able to fully express her concerns about the assignment to the board," albeit with less graphic language than she had planned.[11]  The school board's lack of an official policy on the subject doesn't change that conclusion.

Candra argues that CCSD's lack of a policy shows that the board violated Nevada's Open Meeting Law requiring that any time, place, and manner restrictions be printed on the meeting's agenda, and a profanity-based prohibition was nowhere to be found at the meeting Candra attended.  What Candra doesn't do is provide any authority showing that a school board may constitutionally restrict inappropriate speech only when a written policy permits it, or that lack of compliance with a state procedural law equates to a First Amendment violation.  CCSD may have failed to comply with Nevada's Open Meeting Law, but what that has to do with Candra's First Amendment claim remains unclear.

---

[10] *See* ECF No. 64-2 at 5–11 (revision draft of Governance Policy 11, highlighting language added after the board meeting that Candra attended).

[11] ECF No. 62 at 11.

When assessing the reasonableness of a content-neutral restriction on speech,[12] the "crucial question is whether the manner of expression is basically incompatible with the normal activity of a particular place at a particular time."[13]  Nothing in this new evidence changes my conclusion that the school board was justified in preventing Candra's expression through profane language because it was incompatible with the normal activity of a school-board meeting, or my finding that Candra was not prevented from sharing her message with the board.  So I deny Candra's motion to reconsider my holding based on Governance Policy 11.

### 2.   *Candra's evidence of other profanity at board meetings doesn't change my analysis of how the board dealt with the profane language that she used.*

Candra contends that two newly discovered pieces of evidence show that CCSD's restriction on her speech wasn't content neutral.  The first is a recording of a board meeting from 2019 in which a board member says, "it kind of seems like a dick-measuring contest in a way at this point" when discussing the committee appointments of board members.[14]  No one silenced or censored the board member, which Candra contends "debunks the notion that the Board's censoring of [her] speech was content or viewpoint neutral."[15]  The second is testimony from Jara's deposition, in which he suggests that he has "listened to public speakers come and speak,

---

[12] Candra also argues that newly discovered evidence implies that the board's restriction was actually based on the content of her speech.  As discussed *supra*, I find that argument (and the new evidence to support it) unconvincing, and so I do not analyze this case under content-based-restriction standards.

[13] *Grayned v. Rockford*, 408 U.S. 104, 107–08 (1972).

[14] Clark County School District Board of School Trustees Work Session, June 5, 2019, https://ccsd.eduvision.tv/play.aspx?qev=CT1wecDsedDTDCP3o8PAdA%253d%253d.

[15] ECF No. 64 at 8.

and I would say use language I wouldn't use in a public forum."[16]  He couldn't recall any specific words that prior speakers would use, and couldn't recall if those other speakers were muted or told not to use profane language.

Neither the singular use of the work "dick" at a board meeting three years prior to Candra's speech nor the tentative testimony of the former superintendent warrants reconsidering the dismissal of Candra's First Amendment claim.  Candra fails to connect the dots between the board member's isolated comment and her case.  Nor does she cite or analogize to any relevant legal authority to support her proposition that this distinguishable event has any impact on her claim.  The board member's speech doesn't involve repeated use of profanity and was not uttered during public comment.  Candra's attempt to tie these two instances together merely because they both involve the same indecorous word is unavailing.  And this evidence is not newly discovered; it has been publicly available since 2019 and Candra referenced it in her first set of interrogatory responses in September 2023.[17]

Jara's testimony also fails to move the needle.  Candra hasn't shown that Jara's vague comment chastising unknown speakers for "us[ing] language [he] wouldn't use" at a board meeting should impact my finding that the board's restriction of her speech was reasonable and content neutral.  She doesn't present any authority demonstrating how Jara's testimony could provide more factual plausibility to her allegations or show that speech similar to Candra's was

---

[16] ECF No. 64 at 9.  The plaintiffs cite deposition pages 45:21–46:2 for this quote, but attach only page 45.  *See* ECF No. 64-4.  For the purposes of resolving this motion, I assume that the plaintiffs' quote is an accurate recitation of Jara's testimony.

[17] Plaintiffs contend that they discovered the video after briefing on CCSD's motion to dismiss had concluded (but before the court ruled on the motion), so it couldn't have been raised there. The appropriate course of action in that instance, if a plaintiff truly believes that additional factual information helps state her claim, is to move to amend her complaint to add it—not wait until the motion to dismiss has been decided to bring this information to the court's attention. But procedural defects aside, the new allegations wouldn't have altered my decision.

1   tolerated in the past.  Simply put, Jara's comment doesn't provide any information from which to

2   infer that, in this instance, the board was restricting Candra's speech based on its content.  So I

3   deny Candra's motion to reconsider my dismissal of her First Amendment claim and her

4   equivalent claim under the Nevada Constitution.[18]

5
6   **C.    Plaintiffs fail to demonstrate any reason to reconsider dismissal of their negligence
        claims.[19]**

7       ***1.    Dismissal based on lack of foreseeability was not clear error.***

8           When I analyzed plaintiffs' negligence claims in my prior order, I did so with the

9   understanding that Nevada has recognized a special relationship between student and teacher that

10  imposes an affirmative duty to "aid others in peril."[20]  Even with that special duty in mind, I

11  concluded that plaintiffs didn't plausibly allege that any of the harms that the explicit-monologue

12  assignment purportedly caused were foreseeable by any of the defendants.[21]  Plaintiffs now move

13  for reconsideration of that finding, arguing that I should not have taken into account the fact that

14  no one told Hawes that R.E. was uncomfortable with the assignment.  Instead, plaintiffs insist, I

15  should have focused on whether Hawes "should have foreseen potential harm to any student in

16  _____

17  [18] Candra also argues that her speech was chilled when she was told that she could finish her
    comment only if she refrained from using profanity.  ECF No. 64 at 9–11.  That argument was

18  already raised in Candra's response to CCSD's motion to dismiss.  *See* ECF No. 38 at 6.  I do not
    re-address this argument because none of Candra's new evidence prompts me to reconsider my

19  prior finding that the board's restriction was reasonable and content neutral.  Plus, I do not
    reconsider arguments that were already raised in the initial briefing.

20  [19] Defendants contend that this second motion for reconsideration is untimely, noting that it was
    filed 53 days after the order dismissing plaintiffs' negligence claims hit the docket.  ECF No. 70

21  at 3–4.  This district's Local Rule 59-1(c) requires that motions for reconsideration of
    interlocutory orders be filed "within a reasonable time."  I find that, while the motion could

22  certainly have been filed earlier, the 53-day delay is not unreasonable.  So I consider plaintiffs'
    motion on its merits.

23  [20] *See* ECF No. 62 at 30 & n.140.

    [21] *Id.* at 31–32.

the class,"[22] regardless of what R.E. or anyone else told Hawes, because the special teacher-student relationship required Hawes to "take affirmative steps to warn, protect, or otherwise mitigate the risk created to foreseeable plaintiffs."[23]

Even if I were to excise from my order any reference to what R.E. told or didn't tell Hawes, my conclusion would be the same.  As I stated in my prior order, plaintiffs rely only on "sweeping statements of opinion about the 'pornographic' nature of the monologue to insinuate that anyone would realize that such content would breach a teacher's duty of care."[24]  But Hawes "simply knowing that an assignment has explicit content—as do many famous works of literature, including those read daily by students in classroom settings—does not show that R.E.'s distress was foreseeable."[25]  Nor does it imply that any student's distress would be foreseeable.  Plaintiffs now ask that I rely on a series of logical leaps to get to foreseeability:

> "[I]t can be inferred that Hawes knew that one random student in her class would receive the monologue.  Hawes was also aware that the monologue contained sexually explicit content and innuendos.  As such, it can be inferred that Hawes was aware of the risk that a student could be harmed by acting out the monologue.  Furthermore, it can be inferred that because of the nature of the assignment, Hawes should have been aware of the risk that a student might receive the monologue, not fully understand its content, or feel uncomfortable [performing] it in front of their peers, yet not voice his or her concern to Hawes."[26]

This chain of inferences strains too far and cannot fill the cavern between the facts of this case and a properly pled negligence claim.  While the teacher-student relationship warrants a

---

[22] ECF No. 71 at 3.

[23] ECF No. 67 at 9.

[24] ECF No. 62 at 31.

[25] *Id*.

[26] ECF No. 67 at 9.

heightened duty, the plaintiffs cite no relevant authority showing that the duty extends to the point that teachers must carefully review every assignment and affirmatively shield teenagers from the potential perversion of sexual innuendo.  Viewing the amended complaint as a whole, I cannot conclude that Hawes should have foreseen the harm that plaintiffs allege arose out of this assignment.[27]

### 2.   *Plaintiffs' newly discovered evidence has no impact on the negligence analysis.*

I previously dismissed the portion of plaintiffs' claim alleging that Principal Walker negligently allowed R.E. to meet with teacher Hawes alone after her parents complained about the explicit monologue.  I found that the factual basis of this theory—that "Walker knew that R.E.'s parents were upset that Hawes assigned an explicit monologue"—did not support the inference that anyone at the school would have plausibly foreseen that allowing R.E. to meet with Hawes alone would cause R.E. harm.[28]  Plaintiffs now contend that some statements Hawes made during her deposition supply that missing link in their allegations.[29]  Hawes testified that Walker asked her to meet with R.E. to apologize for assigning the monologue, and Hawes asked him whether he or another adult would be present during that meeting.[30]  According to Hawes, Walker said it would be best if she and R.E. met privately.[31]  When Walker brought R.E. to meet

---

[27] I also reject plaintiffs' "manifest injustice" argument, which calls for the court to impose a policy judgment that teachers and school districts must be made responsible for situations like this because the minor student may "make poor decisions or, in some context, lack capacity to make certain decisions for themselves . . . ."  ECF No. 67 at 10.  Plaintiffs don't support this argument with any authority whatsoever for injecting this policy consideration into the clear framework for negligence claims.

[28] ECF No. 62 at 32.

[29] ECF No. 67 at 11.

[30] ECF No. 67-1 at 6:10–13.

[31] *Id.* at 6:14–21.

with Hawes, Hawes again asked him to stay and he declined.[32]  Hawes testified that she wasn't "thrilled" by Walker's decision because, "now there is no witness" to what happened during that meeting.[33]

Plaintiffs fail to explain how Hawes's testimony has any relevance to R.E.'s negligence claim.  They theorize that Hawes's independent concern about meeting with R.E. alone somehow shows that harm to R.E. during that meeting was foreseeable.  But they provide no connection between Hawes's testimony and the elements of negligence on which I previously found plaintiffs' allegations lacking.  Hawes's comments do not indicate that she or Walker should have foreseen some harm from having Hawes meet with R.E. alone.  They merely show that Walker knew Hawes wanted another adult to be present, not that the failure to abide could put R.E. at risk.  Without a sufficient connection between plaintiffs' negligence claims and this newly discovered evidence, there is no basis to reconsider my prior findings.  And because I don't reconsider my ruling dismissing plaintiffs' negligence claims against the individual CCSD employees, I don't consider their respondeat superior arguments against CCSD.

**Conclusion**

IT IS THEREFORE ORDERED that plaintiffs' motions to reconsider **[ECF Nos. 64 & 67] are DENIED**.

_____
U.S. District Judge Jennifer A. Dorsey
July 8, 2024

---

[32] *Id.* at 7:1–4.

[33] *Id.* at 7:5–8.